(July 19, 1976)

■ MARY LETTIERE, as Administratrix, Respondent, v NAMELOC ESTATES, INC., Defendant, BING AND BING, INC., Respondent, and MARTIN ELEVATOR Co., INC., Appellant.—In a wrongful death action, defendant Martin Elevator Co., Inc. (Martin), appeals, as limited by its brief, from so much of a resettled judgment of the Supreme Court, Kings County, entered March 18, 1975, as, upon a jury verdict, (1) is in favor of plaintiff and against it and (2) dismissed its cross complaint against defendant Bing and Bing, Inc. (Bing). Resettled judgment reversed insofar as appealed from, on the law, cross complaint reinstated, and new trial ordered, as between plaintiff and Martin in the main action, and on the cross complaint, with costs to abide the event. On December 4, 1968, plaintiff's decedent, employed as an elevator operator at the apartment building at 400 East 58th Street in the Borough of Manhattan, fell from the lobby floor into the elevator shaft. He sustained injuries resulting in his death. Mr. Loeb, a tenant, testified that decedent had taken the witness and his wife from an upper floor to the lobby floor; that the Loebs left the elevator, as did the decedent; that Mr. Loeb placed an envelope in the mail chute; that when he turned around he saw decedent step backward to the elevator; and that the elevator doors were open, but the elevator itself was ascending with no one in it. He saw decedent lose his balance; as he was falling he took hold of the greasy cables suspended

beneath the cab and disappeared as the cab moved up. Mr. Loeb ran to the service elevator to call for help. He then heard the thud of a body striking the bottom of the elevator pit. Suit was instituted against the managing agent, Bing, and Martin. (The owner, Nameloc Estates, Inc., although named in the action, was not served.) Martin is an elevator maintenance company chosen by Bing to service the elevators at the building, *but only upon specific request made by Bing.* At the close of the plaintiff's case, in connection with its motion to dismiss, counsel for Bing pointed out that since decedent was "factually and structurally an employee of Bing & Bing", the sole remedy as against Bing was pursuant to the Workmen's Compensation Law. The court dismissed the complaint as against Bing for that reason; no appeal has been taken from that determination. On July 10, 11 and 12, 1968 (some five months prior to the accident), pursuant to request therefor, Martin made an extensive repair of the malfunctioning brakes of the subject elevator. Thereafter, on July 31, August 5 and September 16, 1968 Martin performed services thereon pursuant to calls from Bing, but not specifically related to the spontaneous rising of the elevator. It is to be noted that the tenant, Mr. Loeb, testified that the elevator "would rise unattended [s]o frequently that it [was] probably the biggest topic of conversation among all us tenants". On the other hand, Anita Kuck, employed by Bing as the manager of the subject building, deposed (in an examination before trial read into the record) that she had used that elevator about 50 times in 1968 and had received no complaints about it from tenants or elevator operators. Further, Peter Potaris, Bing's maintenance supervisor, deposed that he had been on the elevator about 10 times in 1968 but had observed no "slipping". Although he had inquired of the operator on those occasions, he had been told of no complaints. On August 22, 1968 Martin wrote to Bing stating that to "insure safe operation of the elevators" the door closers and checks of specified floors (including that of the lobby floor of the subject elevator) "should be taken care of immediately", and set forth the proposed cost thereof. By separate letter of the same date Martin recommended to Bing that all interlocks be put in proper working order. Nevertheless no purchase order was received for the recommended work. Viktor Panker, an elevator mechanic employed by Martin, testified that in November, 1968, two weeks before the accident, he met Miss Kuck while he was working in another building, and that "She told me if I have time to go over to 400 East 58th Street because somebody complained to her that when they were riding the car, the car jumped. I said, 'I can go there right now because I am finished.' And I went over to 400 East 58th Street." When he arrived there he asked for Mr. Peck, the building superintendent. Mr. Panker then testified as follows: "I was advised he is downstairs in the basement, in the motor room. I walked down and I found Mr. Peck sitting on a milk box in the front of the motor room and installing new contacts on the controller. * * * I said hello to him. He said, 'What the hell are you doing here?' I said, 'I was instructed by Miss Kuck to come over here, the car was jumping.' He told me, 'Don't worry about it, I found the trouble. It was contact trouble. That's what I am doing right now. I just finished it.' He instructed the operator in the car to go ahead. The operator operated the elevator and he said, 'That's it, we don't need you no more.' I said, 'Are you sure you don't want me to check the elevator?' He said, 'No, you see yourself the car is running.' I said, 'Okay, good night.'" Bing offered no evidence to contradict Martin's claim that the above-described incident was the only time it had received a complaint of the "jumping" of the elevator after the repair of July, 1968; Mr. Peck was not

produced as a witness to contradict Mr. Panker's version of what had occurred two weeks before the accident. It is claimed, however, there should have been no reliance by Martin on the assurances of Mr. Peck, since the latter was known to be unqualified in elevator work, and further, that Martin should have notified Bing of what had occurred. At the trial plaintiff produced Frank Hochstrasser, an elevator expert, who, although he had not examined the brake mechanism, stated as his opinion that the spontaneous rise of the elevator was due to a defective pin in the elevator brake, and that the pin had either slipped out, or was so pitted or worn as to prevent the brake from properly closing. Also produced was Frank Forlizzi, a New York City Buildings Department elevator inspector, who had visited the scene the day after the accident. He testified that he "had to assume either a brake pin failure or a foreign matter or a foreign object somehow or other jammed the brake open." He observed rouge (i.e., rust) on the outer surface of one of the pins, which, he stated, "is an indication of * * * possible pitting, possible excessive wear", although it was "impossible" for him to say that the pin itself (i.e., below the surface) was rusted. He also noted that the self-closing mechanisms of shaftway doors at the lobby level were not functioning properly. Martin produced a metallurgical expert who testified that the closeness of the fit of the pins precluded the intrusion of moisture or atmosphere, and, in the presence of the jury, he removed the balance of the alleged culprit pin. It was found to be unrusted. Also produced by Martin was Gustave B. Gusrae, a consulting engineer on "vertical transportation", who gave as his opinion that rust on the outside of the pin would not affect the operation of the brake. It was his opinion that the spontaneous rise of the elevator was due to the failure of the brakes to close sufficiently because of the presence of a floating piece of dirt in a hole of the dash pot. The dash pot, claims Martin, was an obsolete device in 1968, whose malfunction was not its responsibility. This, stated the witness, prevented suction of the necessary amount of air to permit the brake to close completely. The jury rendered a verdict for the plaintiff against Martin in the sum of $225,000, and thereafter, on consideration of Martin's cross claim against Bing, that Martin had been negligent to the extent of 60% and Bing to the extent of 40%. The trial court nevertheless dismissed Martin's cross claim against Bing. We conclude that the cross claim should be reinstated and, that due to errors in the charge, the verdict in favor of plaintiff should be set aside, and a new trial ordered. There were two separate theories upon which Martin could have been found to be negligent *on the facts.* The verdict as to liability was general, so that it cannot be ascertained upon which theory negligence was found. One of these was that Martin had repaired the elevator brakes negligently in July, 1968. The other was that Martin's employee, Mr. Panker, had been negligent in permitting himself to be diverted from inspecting the elevator in November, 1968 on the assurances of Bing's employee that the latter had attended to the matter. Nevertheless, as to the cause of action against Martin, the trial court, in effect, charged that Martin had been negligent as a matter of law, by stating "if you believe that Mr. Peck told him that the elevator was working okay and that he, Peck, had fixed it, obviously the defendant Martin was not relieved * * * of its duties in that regard * * * unless the defendant Martin, or one of its officers or employees, reported back to Bing & Bing that conversation, and was then relieved by Bing & Bing of the request to determine the cause of the malfunction and to correct it." Such statement, proper as argument in summation, was not proper as a statement of the law. The reasonableness of Mr. Panker's reliance on Mr. Peck's

assurances was properly a matter for the jury to determine. Since it cannot be determined whether Martin was found to be negligent for the latter reason alone (in that the jury, arguably, could have determined that Martin had properly repaired the elevator in July, 1968), the error is fatal. The dismissal of the cross claim was also improper. The building superintendent, Mr. Peck, was Bing's employee, just as the decedent was. Although the Workmen's Compensation Law barred the decedent's action against Bing, it did not foreclose Martin from asserting that the accident was at least partially due to the negligence of Bing (see *Dole v Dow Chem. Co.,* 30 NY2d 143). The jury could arguably have found that Mr. Panker's failure to inspect the elevator two weeks before the accident was due, at least in part, to Mr. Peck's negligence in stating to Mr. Panker that there was only "contact trouble" and that he had taken care of it. On such state of facts, and because Martin's responsibility was generally that of a repairer on call only (and not that of one who had a contract to maintain the elevator) the cases of *Gardner v 1111 Corp.* (286 App Div 110, affd 1 NY2d 758) and *Rogers v Dorchester Assoc.* (32 NY2d 553) have no application. We also find error in the trial court's refusal to charge that "any party has the right to conduct discovery proceedings with regard to potential evidence in the possession of any other party", after it had been stated in plaintiff's summation that plaintiff had no opportunity to inspect the brake because Martin had "swiped" it out of the shaftway. Martuscello, Acting P. J., Cohalan, Damiani, Shapiro and Titone, JJ., concur.