MARY LETTIERE, as Administratrix of the Estate of PASQUALE LETTIERE, Deceased, Plaintiff, v MARTIN ELEVATOR CO., INC., Defendant and Third-Party Plaintiff-Respondent; BING AND BING, INC., Third-Party Defendant-Appellant.

Second Department, July 3, 1978

### APPEARANCES OF COUNSEL

*Donovan & Donovan (Francis J. Donovan* of counsel), for third-party defendant-appellant.

*Lester Schwab Katz & Dwyer (James J. Harrington* and *Stephen P. Seligman* of counel), for defendant and third-party plaintiff-respondent.

### OPINION OF THE COURT

LATHAM, J.

On December 4, 1968 the plaintiff's decedent, employed as an elevator operator at an apartment building in Manhattan, fell into an elevator shaft from the lobby floor of the building. He sustained injuries which resulted in his death. Suit was brought against Bing and Bing, Inc. (Bing), the building's managing agent, and Martin Elevator Co., Inc. (Martin), the elevator maintenance company chosen by Bing to service the elevators at the building. At the first trial of this action the cause of action against Bing was dismissed because the plaintiff's sole remedy as against it was pursuant to the Workmen's Compensation Law, since the decedent had been Bing's employee. The trial court also dismissed Martin's cross claim against Bing, after the jury returned a verdict of $225,000, apportioned 60% against Martin and 40% against Bing. On appeal we set aside that verdict, holding that the cross claim should be reinstated and ordering a new trial due to certain errors in the Judge's charge to the jury *(Lettiere v Nameloc Estates,* 53 AD2d 899).

██ ██ At the opening of the second trial the plaintiff and Martin settled the claim between them for $250,000, on a concession of liability by Martin, and a consent to the entry of judgment in that amount. The stipulation was that the consent could not be revoked; the entry of the judgment was postponed until the conclusion of the trial. Bing did not join in the stipulation. The trial court informed the jury that Martin and the plaintiff had consented to entry of the judgment, but that the stipulation was not binding on Bing. The revelation to the jury of that settlement between the plaintiff and

Martin was, however, clearly prejudicial to Bing (cf. *Sky v Kahan-Frankl,* 47 AD2d 939).

The jury was charged that it must determine whether Martin was liable in any amount. If Martin was found liable, then it was to determine if, and to what extent, Bing was liable over to Martin. The jury found for the plaintiff, against Martin, and apportioned liability 25% against Martin and 75% against Bing.

■ Bing argues that the cross claim against it must be dismissed since Martin is barred by section 15-108 of the General Obligations Law from seeking contribution, since Martin entered into a stipulation with the plaintiff which constituted a release from liability.

Subdivision (c) of section 15-108 of the General Obligations Law states: "Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." Prior to the commencement of the plaintiff's case, Martin's attorney (Schwab) and counsel for the plaintiff (Peters) entered into the following stipulation on the record:

"MR. SCHWAB: May it please the Court, we have of course had protracted conferences before your Honor regarding this case prior to what I am now saying on the record. On behalf of my client the defendant and third party plaintiff Martin Elevator Company, Inc., I do hereby consent to the entry of a judgment against my client in the gross and total sum of $250,000 inclusive of any and all interest, costs and disbursements up to the date of entry of the judgment, with the understanding of course that this lawsuit will continue on the issues of which have been raised regarding the right of my client to obtain an apportionment from the third party defendant Bing & Bing, Inc. * * *

"MR. PETERS: It is further understood and agreed that the concession and stipulation of liability shall be irrevocable. However, the judgment based upon that concession and stipulation may be entered upon conclusion of the issues by a jury determination on this trial.

"MR. SCHWAB: That is correct, and when you say may be entered, that's the earliest date that it would be entered, Mr. Peters.

"MR. PETERS: So stipulated."

Later, during the trial, the following colloquy took place:

"MR. PETERS: * * * For clarification, I would like Mr. Schwab to acknowledge that the judgment which may be entered by plaintiff in the sum of $250,000 may be entered at the completion of this trial, notwithstanding any verdict which may be rendered by the jury in connection with liability and such judgment may be entered no matter what the jury finds with respect to liability of Martin Elevator.

"MR. SCHWAB: Mr. Peters, I think I know what you're driving at. You have in mind a theoretical possibility that the jury find that Martin was in no way at fault.

"MR. PETERS: Exactly.

"MR. SCHWAB: In that regard, of course, I would like to qualify it. However, just so you understand my position that, if, for example, this jury here could not agree and a mistrial was declared for some reason, then we revert back to what we said on the prior stipulation which is that the judgment to be entered would be done after a jury verdict in the case.

"MR. PETERS: I agree to that. Apparently, just for the sake of clarification now, the plaintiff has an absolute right, an irrevocable right to enter judgment in the amount of $250,000 against the defendant Martin Elevator Company, no matter what a jury may determine with respect to its liability. However, the actual entry of said judgment will be deferred until such time as a jury does in fact render a verdict one way or another. Is that correct?

"MR. SCHWAB: That is correct."

Bing urges that Martin, in granting the plaintiff "an irrevocable right to enter judgment in the amount of $250,000 against the defendant Martin Elevator Company, no matter what a jury may determine with respect to its liability", forfeited its right to contribution as mandated by subdivision (c) of section 15-108 of the General Obligations Law.

Martin argues that it is entitled to contribution, since the earliest point at which it could have obtained its release from liability was at the conclusion of the trial, after a verdict was rendered. Therefore, it characterizes the settlement as "postjudgment" and, in support of its contention, relies on *Rock v Reed-Prentice Div. of Package Mach. Co.* (39 NY2d 34). In *Rock* the plaintiff was injured while operating a certain piece of machinery during the course of his employment. He brought suit against the manufacturer of the machinery, Reed-Prentice, which, in turn, brought a third-party action

against the plaintiff's employer. The jury returned a verdict of $400,000 for the plaintiff against Reed-Prentice, and, on the cross complaint, awarded Reed-Prentice $50,000 against the plaintiff's employer. Both defendants appealed, but before the case was argued in the Appellate Division, the plaintiff settled the main action with Reed-Prentice for $250,000. Since the employer had not joined in the settlement, the defendants continued the appeal with respect to the third-party complaint. One of the contentions of the employer was that since Reed-Prentice had settled with the plaintiff, its right to seek contribution was extinguished by virtue of subdivision (c) of section 15-108 of the General Obligations Law.

The Court of Appeals rejected that argument, holding (p 41) that the statute "has no application to a claim for contribution which has been litigated and reduced to judgment."

The court continued (p 41):

"The overall scheme and purpose of the section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation. There is nothing at all to suggest that this statute was ever intended to nullify a preexisting judgment.

"In short, the settlement between plaintiff and Reed-Prentice does not preclude Reed-Prentice from enforcing the judgment for contribution previously obtained against [the plaintiff's employer] * * * Reed-Prentice is now entitled to contribution for the amount paid in excess of its equitable share."

Martin asserts that since the release was not operative until after the verdict, the bar to its seeking contribution does not apply. In essence, it argues that there would then be a "preexisting judgment" within the meaning of *Rock*. We disagree. There are important, if not crucial, distinctions between this case and *Rock*. *Rock* involved a postjudgment settlement, while this case involves a prejudgment settlement, the *effect* of which was postponed. In addition when Martin settled with the plaintiff, neither the cross claim for contribution against Bing, nor the question of Martin's liability, had been determined.

This case can also be distinguished from the recent case of *State of New York v County of Sullivan* (43 NY2d 815, revg 54 AD2d 29). There, the driver of an automobile was injured when his car struck a barricade at the end of a particular road. As a result of the crash, suit was brought in the Court of

Claims, wherein the plaintiffs obtained judgment against the State. Thereafter one of the plaintiffs agreed to accept a reduced amount of damages in exchange for a withdrawal of the State's appeal from the judgment. The State then sought "indemnification and reimbursement" from the County of Sullivan, alleging negligence in its maintenance of the road on which the accident occurred. The dissent of Presiding Justice KOREMAN of the Appellate Division, Third Judicial Department, whose opinion was adopted by the Court of Appeals, stated that section 15-108 of the General Obligations Law did not preclude the State's action against the county for contribution. The dissent reasoned that (54 AD2d, at p 35): "the State * * * [had] not obtained its own release from liability. Rather, after the State's liability was fixed by the Court of Claims, it proceeded to satisfy that liability by paying and discharging the judgments that were predicated thereon (cf. *Rock v Reed-Prentice Div. of Package Mach. Co.*, 39 NY2d 34)."

When Martin irrevocably settled the plaintiff's claim, its liability had not yet been fixed by the trier of the facts. Therefore, upon entering into the concession and stipulation of liability, Martin's cross claim should have been dismissed.

HOPKINS, J. P., TITONE and O'CONNOR, JJ., concur.

Resettled judgment of the Supreme Court, Kings County, entered December 13, 1976, reversed insofar as appealed from, on the law, with costs, and the claim of Martin Elevator Co., Inc. against Bing and Bing, Inc. is dismissed. No contentions have been raised with respect to the sufficiency of the facts.