Marvin GONZALEZ, Plaintiff,

v.

ARMAC INDUSTRIES, LTD.,
Defendant.

ARMAC INDUSTRIES, LTD.,
Third–Party Plaintiff,

v.

GENERAL THERMOFORMING CORP.,
Third–Party Defendant.

No. 89 Civ. 4636 (RWS).

United States District Court,
S.D. New York.

Feb. 13, 1991.

Gair, Gair, Conason, Steigman & Mackauf, New York City (Anthony H. Gair, of counsel), for plaintiff.

Kroll & Tract, New York City (Robert R. MacDonnell, of counsel), for defendant.

Granik Silverman Sandberg Campbell Nowicki & Resnik, New City, N.Y. (David W. Silverman, of counsel), for third-party defendant.

## OPINION

SWEET, District Judge.

The third-party defendant in the underlying action for personal injuries, General Thermoforming Corp. ("GTC"), a New York corporation, has moved to dismiss or in the alternative for summary judgment dismissing the claims against it pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P. For the reasons set forth below, the motion with respect to the contribution claim of defendant/third-party plaintiff Armac Industries ("Armac"), a Massachusetts Corporation is granted, and the motion with respect to its indemnification claim is denied at this time.

*The Parties*

The plaintiff in this action is Marvin Gonzalez ("Gonzalez"), a citizen of Honduras employed by third-party defendant at the time of the alleged injury that is the basis for this action. Armac manufactured the equipment upon which Gonzalez allegedly injured himself.

*Prior Proceedings*

On July 7, 1989, Gonzalez filed his complaint. After filing a third-party complaint, Armac moved to amend it. That motion was granted on March 16, 1990. On October 18, 1990, GTC filed this motion to dismiss or for summary judgment, and oral argument was heard on November 5.

*The Facts*

Armac designs, manufactures and sells thermoforming machines. On September 29, 1983, one of its machines was shipped to GTC, pursuant to a contract of sale (the "Sale Agreement"). The Sale Agreement included an indemnification provision (the "Indemnification Provision") which stated that:

Purchaser shall use and shall require its employees to use all safety devices and guards and maintain the same in proper working order. Purchaser shall use and require its employees to use safe operating procedures in operating the equipment. If purchaser fails to observe the obligations contained in this paragraph, purchaser agrees to indemnify Armac to persons injured directly or indirectly in connection with the operation of the equipment.

The machine was designed without any type of guard located in front of the die mechanism on the machine. After the installation of the thermoforming machine, GTC installed a guard in front of the die mechanism on the machine.

Gonzalez began his employment with GTC on May 5, 1988. On December 21, 1988, Gonzalez attempted to remove a piece of plastic that had lodged in the upper die area of the machine. He raised the guard and reached into the die area of the machine. The die press came down on his right hand, causing injury to Gonzalez's hand, including the amputation of several fingers.

During the discovery phase of this action, Armac and Gonzalez entered into the following stipulation ("the Stipulation"):

It is hereby stipulated and agreed by and between the attorneys for the plaintiff and the defendant that the defendant hereby admits liability for two percent of any damages sustained by the plaintiff and as may be awarded by the jury herein, and that the pleadings be deemed amended accordingly.

It is further stipulated and agreed that the plaintiff shall not enforce any judgment against the defendant in excess of two percent of any total damages awarded by the jury to the plaintiff herein, except as loan arrangements may be necessary to permit the plaintiff to collect any monies from the third-party defendant in the event that there is an apportionment of liability against the third-party defendant by the jury.

It is further stipulated and agreed that this stipulation is not intended to require the third-party defendant to pay more or less that any amount apportioned against the third-party defendant by the jury

herein, and that the third-party defendant shall only be required to pay its apportioned share.

It is further stipulated and agreed that this stipulation is not intended to prevent the third-party defendant from attempting to establish that the defendant is responsible for more than two percent of the liability herein.

It is further stipulated and agreed that plaintiff and defendant consent to the disclosure of this stipulation to the jury at trial, and that in the event that defendant chooses to produce an officer or an employee of the defendant corporation to testify at trial (or in the event that such officer or employee testifies pursuant to subpoena), the third-party defendant shall have the right to examine the witness concerning this stipulation, its terms and the basis for it. . . .

The parties included reference to the stipulation in the joint pre-trial order.

*Discussion*

GTC seeks dismissal or summary judgment of both of Armac's claims against it as set forth in the amended third-party complaint: (1) Armac's claim for contribution against GTC for its proportionate share of liability and (2) Armac's claim for indemnification based on the Indemnification Provision in the contract.

1. The Claim for Contribution

■ New York General Obligations Law § 15–108 (McKinney 1989) provides in relevant part:

§ 15–108. Release or covenant not to sue

(a) Effect of release or covenant not to sue tortfeasors. When a release or covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, . . . it does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or covenant, or in the amount of the considera-tion paid for it, or in the amount of the released tortfeasor's equitable share of the damages, whichever is the greatest.

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subsection (a) relieves him from liability to any other person for contribution. . . .

(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

Thus, if the Stipulation is a release or covenant within the meaning of § 15–108, then § 15–108(c) bars Armac's contribution claim.

Under New York law, a pre-judgment settlement for a specific dollar sum between the plaintiff and one of the tortfeasors in a personal injury action constitutes a release under § 15–108. *Lettiere v. Martin Elevator Co.*, 62 A.D.2d 810, 812, 406 N.Y.S.2d 510, 513 (2d Dept.1978).

New York courts have yet to address the question of whether a stipulation that fixes liability at a certain percentage, as opposed to a specific dollar amount, falls within § 15–108. It appears likely, however, that New York courts would hold that *Lettiere* governs the specific situation presented by this case. In *Lettiere*, as in the instant case, the agreement was between the defendant and the plaintiff employee. In both cases, New York's Workers' Compensation Law § 29 (McKinney 1990) barred the plaintiffs from recovering directly from their employers. As in the instant case, the defendant impleaded the employer as a third-party defendant.

The interplay of § 29 of the Workmen's Compensation Law, Gen.Oblig.Law § 15–108, and New York's general provisions on joint and several liability, C.P.L.R. § 1401 (McKinney 1990), further compels the conclusion that the Stipulation is a release or covenant within the meaning of § 15–108. The purpose of § 15–108 is to provide a defendant who is one of several tortfeasors with an incentive to settle by assuring that the settling defendant will have no further liability to the other tort-

feasors. Gen.Oblig.Law § 15–108(b). The quid pro quo is that the defendant is barred from seeking contribution against any of the other tortfeasors. Gen.Oblig.Law § 15–108(c). The remaining tortfeasors suffer no harm, as they may offset the amount for which they are ultimately found liable by the amount of settlement between plaintiff and the first defendant. Gen.Oblig.Law § 15–108(a).

If § 29 of the Workmen's Compensation Law applies to an action in which the employer is third-party defendant, § 15–108 still provides some protection. Section 15–108 prevents the settling defendant from seeking contribution from the employer tortfeasor. As the plaintiffs cannot continue the action against the employer, the protections of § 15–108(a) and (b) are unnecessary.

The system would break down entirely if the Stipulation between Gonzalez and Armac at issue in this case fell outside the meaning of § 15–108. If the Stipulation is not a settlement, then Gonzalez's action against Armac proceeds. Armac, however, enjoys the benefit of knowing the top limit of its liability (2 per cent of the $3 million demanded, or $60,000) while at the same time, its ability to seek contribution from GTC is undiminished. GTC has no contribution claim against Armac; GTC as an employer has no direct liability to Gonzalez. The Stipulation therefore allows Armac the benefits of settlement without forcing it to give up anything in return, in contravention of the purposes of § 15–108(c).

Moreover, here, as in *Lettiere*, Armac's agreement with Gonzalez seeks to get around the bar imposed by § 29 of the Workmen's Compensation Law. In *Lettiere*, after the settlement of the action between the plaintiff and defendant, the entry of judgment was postponed until the conclusion of trial to allow the defendant's claim against the third-party defendant (plaintiff's employer) to proceed. On appeal, the court held that, despite the fact that the effect of the settlement was postponed, the cross claim should have been dismissed under § 15–108 at the time the concession and stipulation of liability were

made. Here, the fixing of the settlement at a percentage rather than an amount is similarly designed to allow the third-party action to proceed. Indeed, the terms of the Stipulation provide that "the plaintiff shall not enforce any judgment against the defendant in excess of two percent of any total damages awarded by the jury to the plaintiff herein, *except as loan arrangements may be necessary to permit the plaintiff to collect any monies from the third-party defendant in the event that there is an apportionment of liability against the third-party defendant by the jury.*" (emphasis added). Thus, only by Armac remaining in the action can Gonzalez expect to recover more than the amount that would result from the Stipulation. Therefore, Armac's claim for contribution should be dismissed on the same grounds as in *Lettiere*.

Nor does *Lambert Houses Redevelopment Co. v. HRH Equity Corp.*, 117 A.D.2d 227, 502 N.Y.S.2d 433 (1st Dept. 1986), which Armac cites for the proposition that a liquidating agreement falls outside the scope of § 15–108, apply here. In *Lambert*, plaintiff was a developer who brought a breach of contract action against the general contractor, who in turn impleaded the subcontractors as third-party defendants. During discovery, plaintiff and defendant entered in to a written agreement in which defendant admitted liability, and such liability was fixed and liquidated in such amounts as might be recovered in the action against the third-party defendants. The defendant sought to amend the third-party complaint to reflect such agreement. The third-party defendant opposed the motion to amend on the grounds that § 15–108 governed the liquidating agreement, and therefore that defendant was required to waive his claims against the third-party defendant. Special Term denied the motion, but the Appellate Division reversed.

*Lambert* is distinguishable from the case at bar on the grounds that it was a breach of contract action. Section 15–108 applies only to claims for contribution in tort actions, and therefore the *Lambert* court's holding that § 15–108 did not apply to the

liquidation agreement by no means requires the holding that § 15–108 likewise does not apply in the instant personal injury action.

New York courts' recognition of liquidating agreements, moreover, seems to be limited to cases involving economic loss from defects in the construction of buildings. *See Lambert,* 117 A.D.2d at 227, 502 N.Y. S.2d at 433; *Ardsley Constr. Co. v. Port of New York Authority,* 61 A.D.2d 953, 403 N.Y.S.2d 43 (1st Dept.1978); *Penzell v. State,* 466 N.Y.S.2d 562, 120 Misc.2d 600 (1983). Such agreements usually contain an admission of liability by the defendant in the original action and provide that the amount of payment would be the amount, if any, subsequently recovered by the third-party plaintiff in the action against the third-party defendant. Where, as in the instant case, the action is one for personal injury, a liquidating agreement would appear to violate the purpose of § 15–108. *See* New York Pattern Jury Instructions 2.275A (Supplement 1986) ("It is questionable whether a liquidating agreement in a personal injury action would be permissible since to permit such agreements would appear to defeat the statutory scheme established by the Legislature.") (citing Gen. Oblig.Law § 15–108).

Armac and Gonzalez also rely on *Milton v. Molins Machine Co.,* 86 Civ. 4973 (S.D. N.Y.1989) (available as 1989 Westlaw 38706) for the proposition that an agreement that fixes liability at two per cent of the jury's verdict is a liquidation agreement outside the scope of § 15–108. In *Milton,* the plaintiff entered into a stipulation similar to that in the instant case with the defendant, the manufacturer of the machine upon which plaintiff was injured. Pursuant to the stipulation, the defendant admitted two per cent liability in return for the plaintiff's promise not to enforce against it a judgment exceeding two per cent of the total liability. After a jury verdict which found the defendant 20 per cent negligent and the third-party defendant 65 per cent negligent, third-party defendant moved to dismiss the defendant's claim against it for contribution. In an opinion based on *Lambert,* the court denied third-party defendant's motion to dismiss on the grounds that the stipulation was a liquidating agreement, not a release, and therefore did not fall within the scope of § 15–108.

As it relies entirely on *Lambert* for its determination that the stipulation was a liquidating agreement and not a settlement, *Milton* is not compelling precedent for the reasons cited in the discussion of *Lambert* above. Even if *Milton* were correct in its reliance on *Lambert,* however, the case would still be distinguishable on the facts. Unlike the instant case, the plaintiff in *Milton* was not barred by the Workmen's Compensation statute. The significance of this distinction lies in the fact that, as stated above, the Workmen's Compensation statute's bar on direct recovery from an employer allows the defendant/third-party plaintiff who enters into a stipulation fixing liability at a certain percentage to enjoy all the benefits of settlement without giving up any rights that § 15–108 would require a settling party to cede.

## 2. The Indemnification Claim

■ Under New York law, indemnification, which "shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead" is available only to a defendant who has been held liable solely through the operation of law or to one who has a contractual right thereto. *Overseas Nat'l Airways, Inc. v. United States,* 766 F.2d 97, 102 (2d Cir.1985), quoting *Rogers v. Dorchester Assocs.,* 32 N.Y.2d 553, 565 n. 2, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973) (citations omitted).

■ While a settlement under Gen. Oblig.Law § 15–108 prohibits a claim for contribution by the settling party, the statute does not preclude a claim for indemnification. *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 25, 494 N.Y.S.2d 851, 853, 484 N.E.2d 1354, 1356 (1985). Nor does prior settlement (and admission of liability) preclude the settling party's indemnification claim against a third-party, where

**170**

such claim is based on contract rather than on a theory of implied indemnity. *Overseas Nat'l Airways,* 766 F.2d at 102; *Quevedo v. New York,* 56 N.Y.2d 150, 451 N.Y. S.2d 651, 436 N.E.2d 1253 (1982); *North River Ins. Co. v. Spain Oil Corp.,* 515 N.Y.S.2d 703, 706, 135 Misc.2d 480 (Supreme Court 1987).

Relying on the theory that the Stipulation's admission of liability precluded Armac's indemnification claim, GTC has not shown adequately in its papers the absence of any dispute of material fact on the issue of negligence necessary for a grant of its summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *motion denied,* 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). The summary judgment motion therefore cannot be granted at this time.

*Conclusion*

For the reasons set forth above, GTC's motion with respect to the contribution claim is granted, and the motion with respect to the indemnification claim is denied.

It is so ordered.