Wachtler, J.
Plaintiff David Rock was injured while operating a plastic molding machine at his place of employment. He sued the manufacturer of the machine, Reed-Prentice Division of Package Machinery Company, claiming (1) negligence in the manufacture of the machine and (2) breach of implied warranty. Reed-Prentice in turn brought a third-party action against plaintiff’s employer, Westbury Plastics, seeking "judgment over” on the ground that the injury was caused "solely as a result of the primary, active and affirmative negligence of the third party defendant.”
At the trial, held in November of 1973, the jury was charged, without objection, that if they found both defendants were negligent they should "then determine, on a percentage basis the proportionate share of liability.” The jury returned a verdict of $400,000 for plaintiff against Reed-Prentice and, on the cross complaint, awarded Reed-Prentice $50,000 against Westbury. Both defendants appealed to the Appellate Division.
In September, 1974, before the case was argued at the Appellate Division, plaintiff settled with Reed-Prentice for $250,000. The appeal from the judgment in favor of the plaintiff was discontinued. However, since Westbury had declined to join in the settlement, both defendants proceeded *38 with the appeal from the judgment on the third-party complaint. Westbury argued that the judgment should be set aside, and Reed-Prentice urged that it be enlarged to provide for full indemnification. The Appellate Division unanimously affirmed and we granted Westbury’s motion for leave to appeal to this court.
The primary question is whether the settlement between the plaintiff and Reed-Prentice precludes Reed-Prentice from enforcing the judgment against Westbury. Westbury argues that there are two reasons why the settlement should have this effect.
First it is urged, that by settling with plaintiff for $250,000, Reed-Prentice has not paid, and never will pay, more than its $350,000 share of plaintiff’s judgment and thus is not entitled to contribution pursuant to CPLR 1402.
Secondly, Westbury argues that after settling with plaintiff, Reed-Prentice’s right to seek contribution from Westbury was extinguished by subdivision (c) of section 15-108 of the General Obligations Law.
Both of the statutes cited and relied upon by Westbury came into effect on September 1, 1974 (L 1974, ch 742, §§ 3, 4) sometime prior to the date of the settlement. Nevertheless Reed-Prentice contends that they are not applicable here for the reason that its judgment against Westbury is one for "partial indemnity”, not contribution. There is no merit to this argument. It is true, of course, that these statutes have no application to a claim for indemnity (CPLR 1404, subd [b]; McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108; see, also, Rogers v Dorchester Assoc., 32 NY2d 553, 564-566), but Reed-Prentice’s judgment against Westbury is founded on contribution within the meaning of the statutes.
"There is”, we have noted, "a fundamental distinction between contribution and indemnity” (McFall v Compaignie Mar. Beige, 304 NY 314, 327). In an action for contribution "ratable or proportional reimbursement is sought” (see, also, Prosser, Torts [4th ed], p 310; Note, 47 St John’s L Rev 185, 186). However, for policy reasons, the courts generally refused to "make relative value judgments of degrees of culpability among wrongdoers” (Dole v Dow Chem. Co., 30 NY2d 143, 147) and thus refused to recognize or allow any right to contribution. By statute a limited contribution was permitted in cases where the plaintiff obtained a joint money judgment against *39 several tort-feasors and one defendant had paid more than his pro rata share (see former Civ Prac Act, § 211-a; former CPLR 1401; Fox v Western N. Y. Motor Lines, 257 NY 305). But that, of course, is not the case here.
Indemnity, on the other hand, "is not dependent upon the legislative will. It springs from contract, express or implied, and full, not partial, reimbursement is sought” (McFall v Compaignie Mar. Beige, supra, at p 328). Since indemnity involved a shifting rather than an apportionment "of culpability among wrongdoers” (Dole v Dow Chem. Co., supra, at p 147) the policy objections to contribution posed no bar to a suit for indemnity. Thus the courts would enforce a defendant’s right to indemnity , if it could be shown that the entire loss should be borne by another. In the absence of an express contractual agreement the courts recognized "an implied contract of indemnity * * * in favor of the wrongdoer who has been guilty of passive negligence * * * against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act” (McFall, supra, at p 328). But when, as here, the party seeking indemnification was himself partially at fault, the courts of this State, and throughout the Nation generally, refused to imply a right to partial indemnification against "another who played an effective role in causing the damage” (Dole v Dow Chem. Co., supra, at p 148).
Under the traditional rules then Reed-Prentice would have no right to recover against Westbury by way of contribution or indemnity since it had been found guilty of negligence in the manufacture of the machine which caused the plaintiff’s injury. The claim in fact is based entirely on the right to apportionment announced in Dole v Dow Chem. Co. (supra, pp 148-149) in which we held that "where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party”. There we suggested, analogically at most, that this was "in effect a partial indemnification” (p 147). However when the Legislature codified the apportionment rule announced in Dole they did so by expanding the statutory right to "contribution” allowed by CPLR article 14 *40 (see CPLR 1402 and McLaughlin, Summary Practice Commentary, McKinney’s Cons Laws of NY, Book 7B). The standards governing settlements in these cases are found in section 15-108 of the General Obligations Law which was specifically attuned to the apportionment rights created by Dole (see McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108).
In sum, the type of "contribution” referred to in CPLR 1402 and section 15-108 of the General Obligations Law includes the Dole apportionment. Reed-Prentice’s judgment against Westbury is certainly based on a right to "contribution” within the meaning of the cited statutes. The question then is whether they preclude Reed-Prentice from enforcing the third-party judgment. In our view they do not.
CPLR 1402 provides that "[t]he amount of contribution to which a person is entitled shall be the excess paid, by him over and above his equitable share of the judgment recovered by the injured party”. As indicated, Westbury urges that Reed-Prentice has not paid, and in view of the settlement will never pay, its equitable share of the plaintiff’s judgment.
This is Westbury’s point. The plaintiff’s judgment was for $400,000 and Reed-Prentice’s share was "judicially fixed” at $350,000. Since Reed-Prentice has settled or satisfied the judgment by paying $250,000, "an amount $100,000 less than Reed-Prentice’s own $350,000 apportioned share of liability”, the settlement "renders it an impossibility that Reed-Prentice will ever have to pay to plaintiff any part of Westbury’s share of liability”.
The point would be well taken if Reed-Prentice had simply paid $250,000 in partial satisfaction of the judgment and left the remainder unsatisfied. Then it would be proper to say that Reed-Prentice had not paid its equitable share and thus was not entitled to contribution. But that is not what happened here. The $250,000 paid pursuant to the settlement was a final payment in full satisfaction of the judgment.
In other words the plaintiff’s judgment has been completely discharged and Reed-Prentice is entitled to contribution from Westbury for the amount paid "in excess of its equitable share”—unless, of course, as Westbury urges, section 15-108 of the General Obligations Law extinguishes the right to recover contribution after settlement. The general purpose of section 15-108 of the General Obligations Law is to encourage settle *41 ments by altering or eliminating certain rules of prior law which had an inhibiting effect on the settlement process.
Subdivision (a) permits a plaintiff to settle with a defendant without risking the discharge of other tort-feasors who might be liable for the injury. Under prior law this had been subject to some "uncertainty” (see Report of Law Revision Commission, NY Legis Doc, 1972, No. 65[K]).
Subdivision (b) permits a defendant to settle with plaintiff without fear of being brought back into the action by another defendant seeking contribution. Under prior law this "had become troublesome after the decision in Dole v Dow Chemical Co.” (McLaughlin, Practice Commentary, McKinneys Cons Laws of NY, Book 23A, General Obligations Law, § 15-108).
Subdivision (c) provides that a "tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person”. There is no indication what problem this subdivision was intended to eliminate (see McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108). Apparently the Legislature felt that surrender of the right to contribution is a small price to ask of a defendant who is intent on avoiding litigation. In our view, however, it has no application to a claim for contribution which has been litigated and reduced to judgment.
The overall scheme and purpose of the section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation. There is nothing at all to suggest that this statute was ever intended to nullify a pre-existing judgment.
In short, the settlement between plaintiff and Reed-Prentice does not preclude Reed-Prentice from enforcing the judgment for contribution previously obtained against Westbury. And, as indicated above, Reed-Prentice is now entitled to contribution for the amount paid in excess of its equitable share.
This does not mean, however, that Westbury is obligated to pay the full $50,000. Since the jury was instructed to determine the "proportionate share of liability”, their finding that Westbury must pay $50,000 of the $400,000 verdict established that Westbury was responsible for 12V¿% of the loss. This is Westbury’s equitable share of the judgment. In view of the fact that following the settlement, the judgment was fully *42 satisfied for $250,000 Reed-Prentice is only entitled to be reimbursed for $31,250—12Vi% of the total amount actually paid to plaintiff in satisfaction of the judgment.
The order of the Appellate Division should be modified accordingly.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order modified, with costs, in accordance with opinion herein and, as so modified, affirmed.