FLOYD MAKEUN, Appellant, v STATE OF NEW YORK, Respondent.

Second Department, January 16, 1984

APPEARANCES OF COUNSEL

*Roche & Wolkenbreit, P. C.* (*Jed B. Wolkenbreit* of counsel), for appellant.

*Spitz, Spitz & Fedorchak* (*Andrew L. Spitz* of counsel), for respondent.

OPINION OF THE COURT

GIBBONS, J.

The primary issue to be resolved on this appeal is whether a defendant tort-feasor who settles with the plaintiff after a jury verdict of negligence but prior to an adjudication as to damages may be entitled to contribution against another tort-feasor. Our conclusion is that contribution in such circumstances is not permitted under the current statutory law of this State.

On January 28, 1975, Marion Thorp, while a passenger in a motor vehicle owned by her and operated by her daughter, Linda Thorp, sustained personal injuries when the Thorp vehicle struck a tree on the easterly side of

Route 17A, in the Town of Goshen, in or about the area of premises owned by claimant Floyd Makeun. Marion Thorp thereafter commenced an action against Makeun in the Supreme Court, Orange County. In her verified complaint, Marion Thorp averred that the injuries she sustained were proximately caused by the negligence of Makeun. It was specifically alleged, *inter alia,* that the vehicle in which Marion Thorp was traveling went off the road because water, allegedly flowing from Makeun's land, had accumulated and frozen on the traveled portion of Route 17A, causing a slippery, dangerous and hazardous condition. Makeun instituted a third-party action against the driver of the Thorp vehicle, Linda Thorp.

The jury trial of the Thorp v Makeun and Makeun v Thorp actions was bifurcated and, after a trial on the issue of negligence only, the jury determined that Makeun was 65% responsible for the accident and third-party defendant Linda Thorp was 35% responsible. On December 27, 1978, a judgment was entered on the issue of negligence only. For reasons not indicated in the record, trial on the issue of damages was not commenced until January 21, 1980.

On January 28, 1980, prior to a jury verdict on the issue of damages, Marion Thorp executed a release in favor of Makeun and acknowledged receipt of $250,000 from Makeun. Besides discharging Makeun and his "heirs, executors, administrators, successors and assigns", the release purports to relinquish Thorp's rights against "[a]ny and all tortfeasors known and unknown arising out of the accident of January 28, 1975". On the same day of the release, Marion Thorp and Makeun placed upon the court record a stipulation of settlement. On February 1, 1980, a judgment was filed in the sum of $250,000. The judgment recited that the parties had stipulated in open court that the Thorp v Makeun action was to be settled by the entry of a judgment in favor of Marion Thorp against Makeun in the sum of $250,000.

Alleging payment of the February 1, 1980 judgment, Makeun filed a claim against the State of New York for "contribution and/or indemnity * * * for any and all sums paid by him" in the Thorp v Makeun action. It was specifically contended, *inter alia,* that the damages sustained by

Marion Thorp were a direct result of the acts and negligence of the State, in "owning creating and maintaining a dangerous and icy condition on a state roadway" and that the State was, "by operation of law, the party primarily responsible to indemnify [Makeun] from and against any and all Judgment [sic] which has [sic] been rendered against him". It was further contended that in the alternative, the State, pursuant to CPLR article 14, was liable to Makeun for contribution, based upon "the * * * payment of a Judgment rendered" in the Thorp v Makeun action. The State, by its answer, inter alia, denied the material allegations of the claim.

Subsequently, the State moved for summary judgment seeking to dismiss the claims for contribution and indemnification on the basis that such claims were barred by subdivision (c) of section 15-108 of the General Obligations Law, which provides that a tort-feasor who has obtained his own release from liability shall not be entitled to contribution from any other person. It was contended that the February 1, 1980 judgment, which was entered upon a stipulated settlement, was merely a device to avoid the effect of subdivision (c) of section 15-108 of the General Obligations Law, since the $250,000 paid by Makeun to Marion Thorp represented "a sum of money [Makeun] agreed to pay Marion Thorp as opposed to a sum of money which a jury ordered him to pay to Marion Thorp".

In opposition to the motion for summary judgment, Makeun argued that his claim for contribution was not barred by subdivision (c) of section 15-108 of the General Obligations Law, because the settlement between himself and Thorp occurred after the judgment of liability was entered against him in the Thorp v Makeun action.

The Court of Claims, in granting the State's motion, stated in pertinent part, as follows:

"GOL 15-108 (c) provides that, 'A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.' Had claimant irrevocably settled the Supreme Court matter prior to any jury verdict, it is clear that he would be prohibited from seeking contribution. *Lettiere v Martin Elevator Co.*, 62 AD2d 810, affd 48 NY2d 662. On the other hand, had a money judg-

ment been entered against claimant and then a settlement reached, even for a lesser amount, GOL § 15-108 (c) would not be an obstacle to this action. *State of New York v County of Sullivan,* 43 NY2d 815; *Rock v Reed-Prentice Div. of Package Machinery Co.,* 39 NY2d 34. Here, however, the Court is presented with a somewhat different and apparently novel situation. The settlement was reached after a jury verdict on culpability, but before a verdict and judgment on the issue of damages.

"Because lawyers and judges speak loosely when we say, when referring to a bifurcated trial, that the issue of liability will be tried first, the fact is not changed that, for liability to mean anything, both culpabili[ty] and damage must be determined. Thus, in the instance of GOL 15-108 (c), unless culpability and damage (i.e., liability) are fully and finally determined by either a court or a jury; and, judgment entered upon that determination, contribution cannot be obtained. I do not consider this a particularly just result, especially as The State of New York could not be brought in as a party to the Supreme Court action. However, I believe this is the only reasonable interpretation that can be given to a statute which Dean McLaughlin referred to as the product of '* * * questionable legislative judgment' [General Obligations Law § 15-108 (c) McKinney's Consolidated Laws of New York, Book 23A, p 719]. The legislature has the power to correct the rather anomalous situation created by its judgment. I do not believe a trial court should endeavor to do s[o].

"The claim at bar also alleged that the claimant is entitled to indemnity. Claimant, however, has failed to state any facts which would entitled [*sic*] him to such relief."

Claimant appeals from the order. There should be an affirmance.

CPLR article 14, entitled "Contribution", provides as follows:

"§ 1401. Claim for contribution

"*Except as provided in section 15-108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to*

*property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.*" (Emphasis supplied.)

"§ 1402. Amount of contribution

"The amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his equitable share. The equitable shares shall be determined in accordance with the relative culpability of each person liable for contribution."

"§ 1403. How contribution claimed

"A cause of action for contribution may be asserted in a separate action or by cross-claim, counterclaim or third-party claim in a pending action."

"§ 1404. Rights of persons entitled to damages not affected; rights of indemnity or subrogation preserved

"(a) Nothing contained in this article shall impair the rights of any person entitled to damages under existing law.

"(b) Nothing contained in this article shall impair any right of indemnity or subrogation under existing law."

Section 15-108 of the General Obligations Law, which is referred to in CPLR 1401, states:

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in

subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) *Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.*" (Emphasis supplied.)

The gravamen of this appeal concerns the legislative intent behind subdivision (c) of section 15-108. "The general purpose of section 15-108 of the General Obligations Law is to encourage settlements by altering or eliminating certain rules of prior law which had an inhibiting effect on the settlement process" (*Rock v Reed-Prentice Div.*, 39 NY2d 34, 40-41; see *Franzek v Calspan Corp.*, 78 AD2d 134, 139-141). The purpose is manifestly clear with respect to subdivisions (a) and (b) of section 15-108 (see 1972 Report of NY Law Rev Comm, NY Legis Doc, 1972, No. 65 [K]; NY Legis Ann, 1974, p 17; Twentieth Ann Report of NY Judicial Conference, 1975, pp 224-226). However, "[t]here is no indication what problem [concerning the discouragement of settlements] this subdivision [subd (c)] was intended to eliminate" (*Rock v Reed-Prentice Div., supra,* p 41). In fact, it has been noted that subdivision (c), which provides that a "tortfeasor who has obtained his own release from liability should not be entitled to contribution from any other person", is a barrier to settlements, rather than an aid (Green, General Obligations Law, Section 15-108: An Unsettling Law, 55 NY St Bar J [No. 6, Oct., 1983] 28).

One justification for the existence of subdivision (c) appears to be a need for balance or symmetry in the statute as a whole. A settling tort-feasor enjoys the protection of subdivision (b), which precludes a claim for contribution from being asserted against him. Without the presence of subdivision (c), the settlor, who is protected from contribution, would still be able to exercise a right of contribution against others. Apparently, the Legislature felt that this would be inequitable as to the nonsettlors and that a *quid pro quo* should be arranged whereby when one tort-feasor settles, neither he nor other tort-feasors would receive contribution (see *McDermott v City of New York,* 50 NY2d 211, 220; *Rock v Reed-Prentice Div., supra,* p 41).

A second justification for subdivision (c), and one which is very germane to this appeal, is expressed in both of the Judicial Conference Reports which proposed the 1974 amendments to section 15-108 adding subdivisions (b) and (c) (L 1974, ch 742, § 3). "The waiver of the right to claim contribution where the settling tortfeasor paid more than his equitable share may be justified on the ground that he is a volunteer as to the excess paid by him. 'The rule is familiar that money voluntarily paid by one person may not be recovered back'. *Codling v. Paglia,* 38 AD 2d 154, 161, 162, (3rd Dept. 1972), modified on grounds not relevant here, 32 N.Y.2d 230 [*sic*] (1972)" (Twentieth Ann Report of NY Judicial Conference, 1975, p 227; see, also, Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, p 224). Whatever the merits of applying this rule as to volunteers in the context of the law of contribution (see Green, General Obligations Law, Section 15-108: An Unsettling Law, 55 NY St Bar J [No. 6, Oct., 1983] 28, 30), the fact that the Legislature has so applied it provides a guide in understanding and applying subdivision (c) of the statute.

Both *Rock v Reed-Prentice Div.* (39 NY2d 34, *supra*) and *State of New York v County of Sullivan* (43 NY2d 815, revg 54 AD2d 29) stand for the proposition that a settlement which satisfies a money judgment is not a "release from liability" within subdivision (c) of section 15-108 and that therefore, in such a case, contribution would be available. On first blush this proposition appears to do violence to the express language of subdivision (c) (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3019:60, p 64, 1983-1984 Pocket Part). However, Presiding Justice KOREMAN, in his partial dissenting and partial concurring opinion in *State of New York v County of Sullivan* (54 AD2d 29, 35, *supra*), which was adopted by the Court of Appeals (43 NY2d 815, *supra*), explained that a postjudgment settlement is not a *release* from liability, but rather a *satisfaction* of liability, since the money judgment predicated on that liability has been paid and discharged. The existence of a money judgment, founded on a determination by the fact finder, establishes an obligation which is met when the parties enter into a settlement, even

though that settlement is for less than the judgment. In the language of the above-mentioned Judicial Conference Reports, the postjudgment settlor is not a volunteer, even where the settlement discharges the obligations to the plaintiff of other tort-feasors, because his interest in the lawsuit has become more than that of mere litigant, but that of judgment debtor (see *Dunn v Uvalde Asphalt Paving Co.,* 175 NY 214, 218; see, also, *Chicago Tit. Ins. Co. v Heskestad,* 57 NY2d 632).

A different situation exists in the case of a settlement made prior to the entry of a money judgment. In such a circumstance, it is the settlement, rather than the fact finder, which determines the amount of damages (see Siegel, NY Prac, 1981-1982 Pocket Part, § 176, p 52). *Until the settlement is reached, there is no obligation.* From this point of view, in a sense, any payment or settlement prior to the entry of a money judgment can be considered voluntary (*Dunn v Uvalde Asphalt Paving Co.,* 175 NY 214, 218, *supra*). More specifically, if, subsequent to the settlement, it is judicially determined that the settlement was for an amount in excess of the settlor's equitable share, then that excess can readily be characterized as voluntary, since the payment did not reflect a duty (see *Codling v Paglia,* 38 AD2d 154, 161, mod on other grounds 32 NY2d 330, *supra*). In essence, the settlor has paid some or all of the obligation of another, and the general rule, which the Legislature has chosen to apply in the area of contribution, is that "no debt can be implied in law from a voluntary payment of the debt of another" (*Perlmutter v Timely Toys,* 8 AD2d 834).

In *Lettiere v Martin Elevator Co.* (62 AD2d 810, affd 48 NY2d 662), this court held that where a settlement was reached prior to an adjudication of damages, subdivision (c) of section 15-108 would prevent the settlor from seeking contribution. Claimant would have us hold that this case does not fall under the rule set down in *Lettiere,* but rather falls under that of *Rock* and *State of New York* (*supra*). He relies on the fact that here the settlement occurred after an adjudication of liability, while, in *Lettiere,* there was no adjudication of liability, but only a concession of liability.

As noted by Judge LENGYEL in the Court of Claims, the surface allure of claimant's argument stems from an ambi-

guity in the word "liability". Since there was an adjudication of culpability in the underlying case against Makeun, it does seem that the settlement was in satisfaction of liability, rather than a release from liability, and that, therefore, *State of New York v County of Sullivan (supra)* should apply, allowing for contribution. However, this argument ignores the fact that until there is also an adjudication by the fact finder of damages and subsequent entry of a money judgment, there is no obligation to pay anything. The legislative intent of not allowing a volunteer to recover an excess paid by him leads us to conclude that the concept of "liability" in section 15-108 of the General Obligations Law must include a determination of culpability *and* damages. Therefore, the Thorp v Makeun settlement, which occurred after an interlocutory judgment as to negligence only, prior to a final judgment which included damages, constitutes a prejudgment settlement subject to section 15-108 of the General Obligations Law (*Lettiere v Martin Elevator Co., supra; Flood v Re Lou Location Engr.,* 487 F Supp 364, affd *sub nom. Flood v Japan Line,* 636 F2d 1201, 1202). We also note that the fact claimant was unable to implead the State of New York in the Supreme Court Thorp v Makeun action does not affect the barrier to contribution raised by subdivision (c) of the statute (*Maryland Cas. Co. v State of New York,* 66 AD2d 953).

We sympathize with the view expressed by Judge LENGYEL that the holding in this case does not lead to a very just result. We also note that other jurisdictions have taken a different approach, allowing for contribution in circumstances akin to those present here (see, e.g., *Young v Steinberg,* 53 NJ 252; *Carolina Coach Co. v Cox,* 337 F2d 101 [CA4th, 1974]; *Callihan Interests v Duffield,* 385 SW2d 586 [Tex Ct Civ App, 1964]). However, our Legislature, having considered alternate possibilities (see Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, pp 223-225), enacted subdivision (c) of section 15-108 of the General Obligations Law, which prevents a tort-feasor from obtaining contribution where he has entered into a stipulation of settlement prior to judgment (see *Mitchell v New York Hosp.,* 93 AD2d 832). Any

change in the law must come from the Legislature and not the courts (see Green, General Obligations Law, Section 15-108: An Unsettling Law, 55 NY St Bar J [No. 6, Oct., 1983] 28).

Accordingly, claimant's contribution claim was properly dismissed. Furthermore, although a claim for indemnification is not affected by section 15-108 of the General Obligations Law (*McDermott v City of New York,* 50 NY2d 211, 220, *supra*), we conclude that claimant's indemnification claim was also properly dismissed (see *Garrett v Holiday Inns,* 58 NY2d 253, 263-264).

LAZER, J. P., THOMPSON and BRACKEN, JJ., concur.

Order of the Court of Claims, dated November 23, 1981, affirmed, without costs or disbursements.