OPINION OF THE COURT
Acting Chief Judge Simons.
This Court has accepted the following question certified by the United States Court of Appeals for the Second Circuit: "Whether a defendant manufacturer’s pretrial agreement with an injured plaintiff, admitting liability for two percent of any damages a jury might award, and preventing plaintiff from enforcing against defendant any judgment in excess of 2% of plaintiff’s total damages, is a 'release from liability’ within the meaning of § 15-108 (c) of the General Obligations Law.” (970 F2d 1123, 1126.) We answer that question in the affirmative.
I
Plaintiff was injured when using a machine in the course of his employment with General Thermoforming Corporation (GTC). The machine was manufactured by defendant Armac Industries, Ltd. and sold to GTC in 1983. After receiving workers’ compensation benefits for his injuries, plaintiff commenced an action against Armac in Federal court alleging that it had designed an unreasonably dangerous and defective *5 product. Armac, in turn, commenced a third-party action against GTC alleging claims for contract indemnification and contribution.
Before trial, plaintiff and Armac entered into an agreement by which Armac conceded liability for 2% of any damages which plaintiff might obtain from a jury. In return, plaintiff agreed not to enforce any judgment against Armac in excess of 2% of the total damages awarded, "except as loan arrangements may be necessary to permit the plaintiff to collect any monies from the third-party defendant in the event that there is an apportionment of liability against the third-party defendant [GTC] by the jury.”
After this agreement was disclosed to the court, GTC moved for summary judgment dismissing Armac’s third-party claims. The United Stated District Court granted the motion to the extent of dismissing the claim for contribution, but denied it with respect to the indemnification claim.* Plaintiff and defendant subsequently stipulated that the value of the case was $500,000 and a final judgment was entered. Plaintiff and defendant then appealed to the Court of Appeals. Following the procedure set forth in 22 NYCRR 500.17, the Court of Appeals certified to us the question set forth above.
II
General Obligations Law § 15-108 explains what happens when one of several tortfeasors obtains a release from liability. A settlement, or release, by one tortfeasor does not relieve the others from liability, but it does reduce the amount which can be recovered from them by (1) the amount stipulated by the settlement, (2) the amount of consideration paid for it, or (3) the released tortfeasor’s equitable share of the damages, whichever is greatest (General Obligations Law § 15-108 [a]). The settling tortfeasor is relieved from liability to any other person for contribution but, in exchange, is not entitled to obtain contribution from any other tortfeasor (General Obligations Law § 15-108 [b], [c]). Thus, the statute establishes a quid pro quo arrangement: the settlor limits its liability but in exchange forfeits any right to contribution. The question before us is whether the agreement between Armac and plaintiff constituted a release of Armac from liability to plaintiff so that its claim for contribution from GTC was *6 properly dismissed pursuant to General Obligations Law § 15-108 (c).
Ill
Our decision is controlled by Lettiere v Martin El. Co. (62 AD2d 810, affd 48 NY2d 662). In Lettiere, the plaintiff sued Martin Elevator Co. and it, in turn, instituted a third-party claim against the plaintiff’s employer, Bing and Bing, Inc. Prior to trial, plaintiff and Martin settled the claim for $250,000, but delayed entry of the judgment until after trial. They contended that they had reached a postjudgment settlement which did not jeopardize Martin’s contribution claim against Bing under General Obligations Law § 15-108. The Appellate Division rejected that contention, determining that the settlement was not postjudgment, but rather was a prejudgment settlement, the effect of which was postponed until entry of judgment (Lettiere v Martin El. Co., 62 AD2d, at 814, supra). In claiming otherwise, plaintiff and Martin relied upon our decision in Rock v Reed-Prentice Div. of Package Mach. Co. (39 NY2d 34). In Rock, however, the manufacturer settled after the contribution claim had been fully litigated and reduced to judgment and we held that General Obligations Law § 15-108 did not apply to postjudgment settlements (Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d, at 41, supra). By contrast, in Lettiere neither the cross claim for contribution nor the question of Martin’s liability had been determined at the time Martin conceded liability and settled the claim (Lettiere v Martin El. Co., 62 AD2d, at 814, supra). Martin’s claim for contribution was dismissed because the prejudgment agreement constituted a release from liability within the contemplation of General Obligations Law § 15-108 (0.
Here, as in Lettiere v Martin El. Co. (supra), the third-party action was instituted against the plaintiff’s employer and, at the time Armac conceded 2% liability, neither Armac’s nor GTC’s liability had been determined. Thus, the only essential difference between the cases is that in Lettiere the defendant stipulated to a dollar amount while here the defendant stipulated to a percentage of damages. The difference is without significance. In both cases, the defendant is attempting to limit its liability while continuing its chance of recovering contribution from the plaintiff’s employer, with the recovery being passed on to the plaintiff either directly or, if the *7 defendant has limited resources as in this case, through subsequent "loan arrangements” contemplated by the parties. Agreements such as these violate the quid pro quo system envisioned by the statute and allow a defendant to effectively avoid litigation without making the concomitant sacrifice the statutory scheme contemplates (see, Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d, at 41, supra).
Armac and plaintiff contend that the continuing need to establish manufacturer fault shows that the case has not yet been settled within the contemplation of General Obligations Law § 15-108. The agreement effectively ended the dispute between them however, and, by virtue of the intended disclosure to the jury of Armac’s admission of liability for 2% of any damages awarded by the jury, denied GTC any chance of successfully arguing that Armac had no claim for contribution against GTC either because Armac bore all or no responsibility for plaintiff’s injuries, or because plaintiff bore 100% responsibility. Having conceded nominal liability and terminated the adversarial relationship between itself and plaintiff, Armac stopped defending the main action, informing the court prior to trial that it had abandoned all its defenses and counterclaims, that it would not seek voir dire of prospective jurors, and that it did not plan to call any witnesses on its behalf. By its agreement, Armac effectively avoided any further litigation of the claims against it and consequently forfeited its contribution claim against GTC as required by section 15-108 (c). Having paid to limit its exposure, Armac may not press its contribution claim against GTC, which was not a party to the agreement (cf., Mitchell v New York Hosp., 61 NY2d 208, 216-217).
IV
Nor is there merit to appellants’ contention that the agreement here is simply a loan arrangement similar to the one sanctioned in Feldman v New York City Health & Hosps. Corp. (56 NY2d 1011, revg 84 AD2d 166, for reasons set forth in 107 Misc 2d 145). In Feldman, the Court approved an agreement in which a stranger to the litigation loaned the main defendant the amount necessary to pay the plaintiff so that it could then seek contribution from the third-party defendant. There, the relative liabilities had already been established at trial and the parties were simply attempting to devise a way to satisfy those liabilities. This case is distin *8 guishable because the agreement was reached prior to trial and prior to the determination of the parties’ relative exposure to liability.
Alternatively, Armac and plaintiff contend that their agreement is a liquidating agreement similar to the one approved in Lambert Houses Redevelopment Co. v HRH Equity Corp. (117 AD2d 227). Lambert Houses involved a contract dispute, rather than a personal injury action, and General Obligations Law § 15-108 applies only to contribution claims in tort actions (see, McDermott v City of New York, 50 NY2d 211, 219-220; see also, Board of Educ. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21, 29). Whatever may be the validity of liquidating agreements in contract disputes, Armac’s contribution claim in this tort action cannot survive its agreement with plaintiff without violating the statutory scheme set forth in General Obligations Law § 15-108 (see generally, PJI 2:275A [1992 Supp]).
V
Finally, we note that agreements such as these do substantial violence to the State’s system of workers’ compensation. The sole and exclusive remedy of an employee against his employer for injuries in the course of employment is compensation benefits (see, Workers’ Compensation Law §§ 11, 29 [6]; Billy v Consolidated Mach. Tool Corp., 51 NY2d 152, 156). Fixed compensation is guaranteed to the injured employee regardless of fault and in exchange for reducing the costs and risks of litigation to the parties. When we decided that a defendant manufacturer could recover contribution from a plaintiff’s employer in Dole v Dow Chem. Co. (30 NY2d 143), we concluded that an exception to the Workers’ Compensation Law’s exclusivity rule was warranted in order to avoid inequity to a defendant left with the total bill for a plaintiff’s injuries because of the mere happenstance that the other tortfeasor was the plaintiff’s employer and therefore immune from direct suit (see, Sommer v Federal Signal Corp., 79 NY2d 540, 558). In subsequent decisions we have refused to weaken the exclusivity rule further (see, Billy v Consolidated Mach. Tool Corp., 51 NY2d, at 159, supra [rejecting "dual capacity” doctrine which would have permitted employees to sue employers directly in their capacity as property owners or manufacturers]; Heritage v Van Patten, 59 NY2d 1017, 1019 [disallowing suit against coemployee/property owner because work *9 ers’ compensation constitutes the exclusive remedy against a coemployee]).
The plan devised by plaintiff and defendant allows the defendant, in effect, to sell plaintiff its claim against plaintiff’s employer thereby avoiding the exclusivity provisions of the statute. Approval of the practice would jeopardize the workers’ compensation system, violating the balance embodied in the law, by holding employers subject to the no-fault liability envisioned by the statute but denying them the protection from tort actions and large damage verdicts which the statute was intended to foreclose (see, Billy v Consolidated Mach. Tool Corp., 51 NY2d, at 159, supra). The rationale for the rule in Dole v Dow Chem. Co. (supra) was to achieve an equitable result between defendants. It did not signal a move to expose employers to tort liability so that an employee could obtain a recovery from an employer in excess of workers’ compensation benefits. Agreements such as the one presented here do just that, enabling an employee to do indirectly that which cannot be done directly, to reach beyond impecunious or insolvent defendants and into an employer’s deep pockets. The agreement not only is contrary to General Obligations Law but it also violates the exclusivity policy embodied in the Workers’ Compensation Law.
Accordingly, we hold that the Armac agreement constituted a "release from liability” within the meaning of General Obligations Law § 15-108 (c) and therefore the certified question should be answered in the affirmative.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.

 By stipulation the indemnification claim was discontinued without prejudice to defendant reinstating it following determination of the appeal.