Louis ORSINI and Mary Orsini, Plaintiffs,

v.

Nahum KUGEL and German C. Garcia, Defendants,

Jean Paul Pierre and Moisture Hacking Corp., Defendants–Appellants,

Chris Roos and George Roos, Defendants–Appellees.

No. 348, Docket 93–7181.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1993.

Decided Nov. 19, 1993.

Edward A. McDonald, New York City (William J. McMorris, Reboul, MacMurray, Hewitt, Maynard & Kristol, of counsel), for defendants-appellants.

Milton M. Witchel, New York City (Stephen G. Ringel, of counsel), for defendants-appellees.

Before: VAN GRAAFEILAND, WALKER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

In the aftermath of a personal injury diversity action, the United States District Court for the Southern District of New York (Mukasey, *J.*) entered judgment against one set of defendants on the cross-claim for contribution asserted by another set of defendants. Plaintiffs, who are not parties to this appeal, had obtained a jury verdict against defendants-appellants John Paul Pierre and Moisture Hacking Corporation (jointly, "Moisture Hacking") and defendants-appellees Chris Roos and George Roos (the "Rooses"). Plaintiffs thereafter agreed to settle the action for less than the verdict. Judgment was entered and the personal injury

settlement was effectuated by a satisfaction of judgment. The Rooses then obtained judgment in the amount of $222,000 plus pre-judgment interest on their cross-claim against Moisture Hacking, from which Moisture Hacking brings this appeal.

Moisture Hacking argues that the cross-claim for contribution was barred for two reasons: (1) the parties had executed (although no one filed) a stipulation of discontinuance as part of the settlement of the action with plaintiffs; and (2) New York General Obligations Law § 15–108 precludes a contribution claim by a settling tortfeasor. Moisture Hacking also argues that the Rooses were not entitled to pre-judgment interest. Neither the unfiled stipulation nor any cited principle of New York law bars the contribution claim, and we therefore affirm the award of $222,000. We reverse the award of pre-judgment interest, however, because the Rooses' claim sounds solely in contribution for which pre-judgment interest is not available under New York law.

## BACKGROUND

A taxicab carrying plaintiffs Louis and Mary Orsini collided with two other cars near the corner of Fifth Avenue and 56th Street in New York City. The injured plaintiffs sued Moisture Hacking, the Rooses, German Garcia and Nahum Kugel, who were the owners and drivers of the taxicab and cars involved. All of the defendants interposed cross-claims for contribution. The case proceeded to trial. On April 2, 1992, a jury returned a verdict in plaintiffs' favor, finding Moisture Hacking 90 percent liable, the Rooses 10 percent liable, and Garcia and Kugel blameless. Total damages were assessed at $415,581.

After the verdict but before entry of judgment, plaintiffs agreed to compromise their claims. The record does not reveal what, if anything, Garcia and Kugel paid, but whatever the terms, the remaining defendants waived their right to set off as to them. As to Moisture Hacking and the Rooses, plaintiffs agreed to accept $280,000, a sum equal to the limits of these defendants' insurance policies. The settlement agreement also called for entry of judgment pursuant to the

verdict. Hence, on April 27, 1992, judgment was filed against Moisture Hacking and the Rooses, jointly and severally in the amount of $415,581. Immediately thereafter, payment of the reduced amount was made as follows: Moisture Hacking had earlier deposited with the court the proceeds of its $30,000 liability policy, and in the settlement consented to the transfer of that money to plaintiffs' attorney. The Rooses paid plaintiffs the proceeds of their $250,000 insurance policy. Plaintiffs executed general releases in favor of Moisture Hacking and the Rooses, and a satisfaction of judgment which was filed on May 15, 1992.

The only other documentation of the settlement in the record is a single-paragraph "Stipulation Discontinuing Action With Prejudice," executed by plaintiffs, Moisture Hacking and the Rooses on April 27, 1992, the same day judgment was filed on plaintiffs' claims. The Rooses characterize the stipulation as a "belt-and-suspenders device" intended only to confirm the termination of plaintiffs' claims against all defendants. Moisture Hacking argues that the stipulation of discontinuance, which was executed after the parties consented to terminate plaintiffs' claims by entry of judgment, could have had no purpose other than to extinguish the cross-claims of the signatory defendants. On its face, the stipulation of discontinuance does not preserve any claim or reserve to the Rooses any right to seek contribution. The stipulation recites that it "may be filed without further notice with the Clerk of the Court." Although the stipulation could have been filed by any party, no one filed it; nor does it appear to have been presented to the district court other than as an exhibit to motion papers.

On June 1, 1992, the Rooses filed a motion for judgment on their cross-claim seeking contribution from Moisture Hacking. Moisture Hacking contested the motion, arguing that the contribution claim was barred by the fully executed stipulation discontinuing the action, and by New York General Obligations Law § 15–108 (McKinney's 1989) which bars contribution claims by settling tortfeasors. The district court granted the Rooses' motion in an opinion and order dated November 30,

1992 which addresses only the application of section 15–108. The district court found dispositive *Rock v. Reed–Prentice Div. of Package Machinery Co.,* 39 N.Y.2d 34, 41, 382 N.Y.S.2d 720, 723, 346 N.E.2d 520, 524 (1976), in which the New York Court of Appeals held that section 15–108 "has no application to a claim for contribution which has been litigated and reduced to judgment."

The district court awarded the Rooses $222,000, which is 90 percent of the total payments made by the two groups of defendants reduced by the amount actually paid by Moisture Hacking. In a judgment entered on February 2, 1993, the district court also awarded pre-judgment interest at a rate of nine percent per annum from April 27, 1992 through January 14, 1993. This second judgment finally disposed of all claims as to all parties. The Rooses' cross-claim was thus ultimately terminated by entry of judgment rather than by stipulation. This appeal ensued.

## DISCUSSION

### I. Stipulation of Discontinuance

■ The effect of a voluntary dismissal is governed by Fed.R.Civ.P. 41(a). Moisture Hacking argues that the unconditional stipulation of discontinuance, allegedly executed as part of a global settlement, extinguished the Rooses' cross-claim for contribution and divested the district court of jurisdiction to adjudicate it. The requirements of Rule 41(a)(1)(ii) render Moisture Hacking's argument untenable:

> an action may be dismissed by the plaintiff without order of court ... (ii) by *filing* a stipulation of dismissal signed by all parties who have appeared in the action.

(Emphasis added.) The plain language of the rule requires that the stipulation be filed in order to effectuate a voluntary dismissal. We need not decide whether, if filed, the stipulation would have terminated whatever then remained of the action. *But see Barr Laboratories, Inc. v. Abbott Laboratories,* 867 F.2d 743, 748 (2d Cir.1989). The unfiled stipulation has no such effect. All claims have been resolved by entry of two judgments, and those judgments are not ren-dered infirm by the existence of the unfiled stipulation. *See McCall–Bey v. Franzen,* 777 F.2d 1178, 1185 (7th Cir.1985) (later-filed stipulation of dismissal with prejudice has no effect since judge had already ordered the case dismissed without prejudice). Moisture Hacking made no application in the district court to vacate either judgment, and we therefore do not consider whether the district court could have permitted the filing of the stipulation under that circumstance.

■ Moisture Hacking characterizes the failure to file as "ministerial error." A stipulation of discontinuance, however, is not self-executing. Since the stipulation need not be so-ordered by the judge, the court would ordinarily have no knowledge of an unfiled stipulation of discontinuance and would not know what cases were still live on its docket. It is therefore not incidental that Rule 41 gives effect to a stipulation of discontinuance only when it is filed. *See McCall–Bey,* 777 F.2d at 1185 ("The requirement that the stipulation be filed in court is not merely a technicality....").

■ We similarly reject the suggestion that inclusion of the stipulation as an exhibit to the parties' motion papers on the cross-claim constituted the requisite filing. *See* Fed.R.Civ.P. 5(e). Although an oral stipulation in open court can effect dismissal, *see In re Furlong,* 885 F.2d 815, 817–18 (11th Cir. 1989); *Carter v. Beverly Hills Sav. & Loan Ass'n,* 884 F.2d 1186, 1191 (9th Cir.1989), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990); *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 195 (5th Cir.1980); *but see United States v. Transocean Air Lines, Inc.,* 356 F.2d 702, 705 (5th Cir.1966) (Rule 41(a)(1)(ii) dismissal can be effected only when stipulation is filed by all parties), that is not what happened in this case. Here, the parties did not orally stipulate in open court to discontinue the action; nor did any party seek to effectuate the signed stipulation by filing it with the clerk prior to entry of judgment on the Rooses' cross-claim for contribution. Although both parties attached the stipulation of discontinuance as an exhibit to their motion papers on the cross-claim, they did so in order to contest its meaning and effect. Therefore, the cross-claim was

not extinguished by stipulation and the district court had power to adjudicate it on the merits.

Moisture Hacking urges that, in order to prevent an injustice, the stipulation should be given its intended effect of terminating the litigation. While Moisture Hacking admits that "each of the parties shares responsibility" for failing to file the stipulation, it claims that it had reason to believe that the Rooses' counsel would perform the acts needed to effectuate the settlement. Nothing in the record, however, relieved Moisture Hacking of the obligation to monitor the progress of the action and attend diligently to matters affecting its interests. *See* 11 Wright & Miller, *Federal Practice and Procedure—Civil* § 2864, at 214 (1973) ("A party remains under a duty to take legal steps to protect his own interests."). The district court is not required to intuit the parties' intentions as to a matter so formal as the termination of legal proceedings. Rather, "[t]he parties owe the district court such efforts as needed to achieve formal closure of legal proceedings; they cannot expect … that the district court by administrative order will tie up litigants' loose ends." *United States v. 27.09 Acres of Land,* 1 F.3d 107, 111 (2d Cir.1993). No relief is available in this Court from the consequences of the parties' failure to file the stipulation of discontinuance.

## II. New York Law on Contribution

■ Moisture Hacking argues in the alternative that the Rooses waived their right to contribution under New York law by settling with the plaintiffs. Article 14 of New York's Civil Practice Law and Rules implements the state policy that favors equitable sharing of liability among tortfeasors, and does so by providing for contribution among joint tortfeasors. The Legislature recognized that contribution rights might have the unintended consequence of inhibiting out-of-court settlements, and therefore enacted New York General Obligations Law § 15–108 to limit the right to recover contribution after settlement. *See Mitchell v. New York Hospital,* 61 N.Y.2d 208, 215, 473 N.Y.S.2d 148, 152, 461 N.E.2d 285, 289 (1984).

Specifically, section 15–108(a) provides that a settlement paid by one tortfeasor in exchange for a release reduces the claim of the releasor against the other tortfeasors. The statute continues:

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

Section 15–108 thus affords a *quid pro quo:* "The settling tortfeasor is relieved from liability to any other person for contribution but, in exchange, is not entitled to obtain contribution from any other tortfeasor." *Gonzales v. Armac Industries, Ltd.,* 81 N.Y.2d 1, 6, 595 N.Y.S.2d 360, 362, 611 N.E.2d 261, 263 (1993); *see also Cover v. Cohen,* 113 A.D.2d 502, 511, 497 N.Y.S.2d 382, 388 (2d Dep't 1985) ("§ 15–108 was enacted as one unit and cannot logically be construed to permit one but not others of its subdivisions to apply in a given case").

The New York Court of Appeals has held, however, that section 15–108's *quid pro quo* was not intended to cover settlements entered into after the parties' respective liabilities have been apportioned and quantified in a judgment: "it has no application to a claim for contribution which has been litigated and reduced to judgment." *Rock v. Reed–Prentice Div. of Package Machinery Co.,* 39 N.Y.2d 34, 41, 382 N.Y.S.2d 720, 723, 346 N.E.2d 520, 524 (1976). The rule established in *Rock* has been repeatedly affirmed. *See, e.g., Gonzales,* 81 N.Y.2d at 6, 595 N.Y.S.2d at 362, 611 N.E.2d at 263; *Mitchell,* 61 N.Y.2d at 217, 473 N.Y.S.2d at 153, 461 N.E.2d at 290 (1984); *Lettiere v. Martin Elevator Co.,* 62 A.D.2d 810, 814, 406 N.Y.S.2d 510, 512–13 (2d Dep't 1978), *aff'd,* 48 N.Y.2d 662, 421 N.Y.S.2d 879, 397 N.E.2d 390 (1979). These cases emphasize that the *Rock* exemption from section 15–108 comes into play when settlement post-dates entry of judgment. The question presented on this

appeal is whether the *Rock* rule applies to save the Rooses' contribution claim where the agreement to settle was reached after a jury verdict but before entry of judgment. For the reasons set forth below, we conclude that the *Rock* principle governs here, where the jury apportioned liability among tortfeasors and determined the amount of damages prior to the settlement, where judgment was entered on the verdict pursuant to the settlement, and where payment of the reduced settlement amount was made in satisfaction of the judgment.

The *Rock* rule rests on the legislative intent of section 15–108. The transparent purpose of section 15–108(a) and (b), as the New York Court of Appeals has found, is to encourage settlement by affording settling parties certainty and finality. *Rock,* 39 N.Y.2d at 41, 382 N.Y.S.2d at 723, 346 N.E.2d at 524. The court, however, found "no indication what problem [15–108(c) ] was intended to eliminate," and surmised, "[a]pparently the Legislature felt that surrender of the right to contribution is a small price to ask of a defendant who is intent on avoiding litigation." *Id.* (citation omitted). The court concluded:

> The overall scheme and purpose of the section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation. There is nothing at all to suggest that this statute was ever intended to nullify a preexisting judgment.

*Id.* Faced with a post-judgment settlement between the plaintiff and one tortfeasor, the *Rock* court required the non-settling tortfeasor to pay as contribution its share of the reduced amount paid to the plaintiff in satisfaction of the judgment (that share being deducted from the verdict against each joint tortfeasor). *Id.* at 41–42, 382 N.Y.S.2d at 723–724, 346 N.E.2d at 524.

■ Subsequent decisions of the New York courts have explained that section 15–108(c)'s waiver of contribution rights derives from the principle that "money voluntarily paid by one person may not be recovered back." *Mitchell,* 61 N.Y.2d at 216, 473 N.Y.S.2d at 152, 461 N.E.2d at 289 (quoting

Judicial Conference Report on CPLR, McKinney's Session Laws of NY, 1974, at 1820 (citation omitted)). Section 15–108 effectuates this principle by

> forestalling future litigation between a settling tort-feasor, who voluntarily bought his release from the case at a price he considered fair, and nonsettling tort-feasors who contested their liability at trial and prevailed in having the ultimate damage award determined to be less than the settling tort-feasor believed it would be at the time he settled.

*Id.* A tortfeasor who settles with a claimant by paying more than what turns out to have been his equitable share is deemed a volunteer as to the excess, and therefore cannot seek reimbursement as to that excess. *See Makeun v. State,* 98 A.D.2d 583, 590, 471 N.Y.S.2d 293, 298 (2d Dep't 1984).

A tortfeasor who settles after a determination of culpability and damages, however, is not a volunteer in any sense:

> The existence of a money judgment, founded on a determination by the fact finder, establishes an obligation which is met when the parties enter into a settlement, even though that settlement is less than the judgment.... [T]he postjudgment settlor is not a volunteer, even where the settlement discharges the obligations to the plaintiff of other tort-feasors, because his interest in the lawsuit has become more than that of mere litigant, but that of judgment debtor.

*Id.* at 589–90, 471 N.Y.S.2d at 297 (citations omitted); *see also State v. County of Sullivan,* 43 N.Y.2d 815, 402 N.Y.S.2d 397, 373 N.E.2d 291 (1977), *reversing on grounds stated in dissenting op. below,* 54 A.D.2d 29, 35, 386 N.Y.S.2d 253, 257 (3d Dep't 1976) (sole defendant did not waive contribution claim against other tortfeasors by paying judgment in reduced amount because it "has not obtained its own release from liability"; it has merely "satisf[ied] that liability by paying and discharging the judgments that were predicated thereon" (citation omitted)). In *Makeun,* one tortfeasor settled after the entry of an interlocutory judgment as to liability, but prior to a determination of damages and entry of a money judgment. The

settling tortfeasor's contribution claim was held to be barred by section 15–108, and was not saved by the *Rock* rule, because the settlor was still a volunteer: "until there is also an adjudication by the fact finder of damages and subsequent entry of a money judgment, there is no obligation to pay anything." *Makeun*, 98 A.D.2d at 591, 471 N.Y.S.2d at 298.

Section 15–108 was thus intended to encourage the voluntary payment of claims by allowing the volunteer to fix the amount owed, thereby gaining certainty and finality at the risk of overpayment. Under *Rock* and its progeny, if a pre-existing judgment has already achieved certainty and finality, the scheme of incentives and risk allocation created by section 15–108 does not operate and thus gives way to the competing state policy favoring equitable loss-sharing through effectuation of contribution rights. *See Rock*, 39 N.Y.2d at 40–41, 382 N.Y.S.2d at 722–23, 346 N.E.2d at 523–24; *Mitchell*, 61 N.Y.2d at 215, 473 N.Y.S.2d at 152, 461 N.E.2d at 289.

In the present case, Moisture Hacking and the Rooses were anything but volunteers when they agreed to settle with plaintiffs. The impetus for this settlement was a jury verdict apportioning joint and several liability and quantifying damages. No further findings of fact were required to fix defendants' respective legal obligations. As part of the settlement, the parties consented to entry of judgment pursuant to and in the amount of the verdict. Immediately thereafter, the Rooses paid plaintiffs a reduced amount in satisfaction of the judgment, and the court released to plaintiffs the moneys that Moisture Hacking had deposited with the clerk. We predict that, under these circumstances, the New York Court of Appeals would apply the *Rock* rule and permit the cross-claim for contribution to go forward. Such an application of the *Rock* rule serves both of the legislative objectives that control this area of law: (a) it achieves the equitable loss-sharing promoted by Article 14, (b) without impairing the incentives to settle contained in section 15–108. When the parties here agreed to compromise the verdict, the incentives to settle created by section 15–108 no longer existed: the parties needed no protection from future litigation or uncertainty because the respective rights and liabilities of all parties had been established. Therefore, consistent with *Rock*, the district court properly enforced New York's statutory contribution rights.

Following the arithmetic used in *Rock*, Moisture Hacking should have paid 90 percent and the Rooses should have paid 10 percent of the $280,000 plaintiffs agreed to accept in satisfaction of the judgment. Thus, Moisture Hacking is liable for $252,000 and the Rooses are liable for $28,000. The Rooses have overpaid by $222,000 and are entitled to contribution from Moisture Hacking in that amount, as the district court has determined.

III. Availability of Pre-judgment Interest

 The judgment entered on the Rooses' cross-claim on February 2, 1993 provides for the payment of pre-judgment interest from April 27, 1992, the date of execution of the satisfaction of judgment on plaintiffs' claims. Moisture Hacking argues that this aspect of the award was error under New York law. The governing New York statute, Civil Practice Law and Rules § 5001, allows for pre-judgment interest in contract and property damage cases, but does not allow for pre-judgment interest in personal injury cases. Accordingly, pre-judgment interest is not permitted on a claim for contribution in a personal injury case. *La Buda v. State*, 86 A.D.2d 692, 693, 446 N.Y.S.2d 534, 536 (3d Dep't 1982).

The Rooses contend that their contribution claim also sounded in indemnity, which is a quasi-contractual cause of action that will support an award of interest under CPLR § 5001. No findings were made in the district court on this issue, but the record on appeal makes plain that the Rooses cannot plausibly cast their cross-claim in terms of indemnity.

 The New York Court of Appeals has emphasized that contribution and indemnity are fundamentally different claims:

> The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution.... The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a con-

tract, express or implied, and full, not partial reimbursement is sought. *McDermott v. City of New York*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460, 462 (1980) (citations and internal quotes omitted). Indemnification is not available to a party who "was himself partially at fault." *Rock*, 39 N.Y.2d at 39, 382 N.Y.S.2d at 722, 346 N.E.2d at 522. The Rooses' cross-claim arose out of their liability as joint tortfeasors and is for contribution alone, regardless of how it is characterized in the pleadings. The Rooses have consistently claimed only partial, proportional reimbursement of the judgment against them. No contract exists, implied or otherwise, between the Rooses and Moisture Hacking, who were strangers until they collided on Fifth Avenue. Therefore, no pre-judgment interest on the cross-claim is available under CPLR § 5001.

### CONCLUSION

The judgment of the district court is affirmed as to the award of $222,000 to the Rooses on their cross-claim for contribution and reversed as to the award of pre-judgment interest. The parties shall bear their own costs.