751 F.2d 546
 36 Fair Empl.Prac.Cas. 1249,
35 Empl. Prac. Dec. P 34,878
Shelley ANDERSON, Wilfred Boudreaux, James Britt, John
Carroll, Russell Footman, Waverly Green, Graydon Griffith,
Lawrence Hawkins, Francisco Hernandez, Herbert Holmes, Henry
Ingram, Clarence Lamar, William Moody, James Parrott, James
Perry, James Pettigrew, George Sharpe, Sr., Kenneth
Williams, Madison Square Garden Center, Inc. and Madison
Square Garden Corporation, Plaintiffs-Appellees,
v.
LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Defendant-Appellant.
 No. 76, Docket 84-7384.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 25, 1984.
Decided Dec. 31, 1984.
 
 Lewis Tesser, New York City (Segal & Tesser, New York City, of counsel), for individual plaintiffs.
 Stecher, Jaglom & Prutzman, New York City (Jamie B.W. Stecher, New York City, of counsel), for Madison Square Garden Corp. and Madison Square Garden Center, Inc.
 Norman Rothfeld, New York City, for defendant-appellant.
 Before LUMBARD, MESKILL and PIERCE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO ("Local 3"), which represents laborers employed at Madison Square Garden, appeals from an order of the District Court for the Southern District declaring that Local 3 can assert no claim sounding in contribution, indemnification, or otherwise in connection with a judgment entered against it for violation of the civil rights laws.
 
 
 2
 Individual plaintiffs and plaintiffs Madison Square Garden Center, Inc. and Madison Square Garden Corporation ("the Garden entities") commenced this action for declaratory relief soon after defendant Local 3 announced that it would seek contribution or indemnification for amounts awarded to the individual plaintiffs in an antecedent litigation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1970), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981 (1970), brought by classes of black and hispanic individuals who were or would be employed as cleaners at Madison Square Garden. See Ingram v. Madison Square Garden Center, 482 F.Supp. 414; 482 F.Supp. 918 (S.D.N.Y.1979); 535 F.Supp. 1082 (S.D.N.Y.1982), modified, 709 F.2d 807 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983). Judge Sand, finding no factual question to be tried, granted plaintiffs' summary judgment motion and declared them not liable to Local 3 for any monies associated with the antecedent litigation. 582 F.Supp. 627 (S.D.N.Y.1984). For reasons substantially in agreement with those of the district court, we affirm.
 
 I.
 
 3
 The consolidated employment discrimination suits, from which the present declaratory judgment action stems, named, as defendants, the Garden entities, Local 3, and others. The suits alleged that the defendants had violated the civil rights laws by engaging in a pattern of hiring and employment practices which made it impossible for class members to secure higher paying and generally more desirable positions as laborers at Madison Square Garden. Prior to the trial of these antecedent suits, which commenced in 1976 and 1978, the plaintiff classes entered into a consent decree with all defendants other than Local 3. By the terms of the decree, which was approved by the district court in October 1979, see 482 F.Supp. 426 (S.D.N.Y.1979), the settling defendants agreed to undertake remedial measures, including the immediate hiring of class members and the setting of employment goals for minorities, and to pay a monetary award and attorney's fees. The plaintiff classes withdrew their claims against the settling defendants, with prejudice, and agreed to indemnify them from claims by Local 3.
 
 
 4
 Litigation against Local 3 proceeded to trial and resulted in a finding that the union had violated both Title VII and Sec. 1981. 482 F.Supp. at 424. Judge Sand found that Local 3, which referred applicants to the Garden to fill positions in its permanent laborer work force, had engaged in a pattern of "subjective and standardless" referrals and that the union had frustrated the attempts of minorities to gain information about becoming laborers at the Garden. Id. at 420-21. The court entered judgment against Local 3 for injunctive and monetary relief, specifically accounting for payments received by the plaintiff classes from the settling defendants and reducing Local 3's liability accordingly. 535 F.Supp. at 1095. On appeal, the award against Local 3 was upheld, as modified by a panel of this court. 709 F.2d 807 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983). Local 3 has paid a total of $684,514, including interest, into an escrow account that will be used to satisfy the judgment, subject to determination of the issues here.
 
 
 5
 The plaintiffs herein, settling parties in the prior litigation, brought this action seeking a judgment "declaring that Local 3 has no claim and is not entitled to any award for contribution, indemnification or otherwise with respect to the amounts paid (or to be paid) to the plaintiff classes in the antecedent litigation." Local 3 denied the material allegations of the complaint and asserted claims seeking to recoup all or part of the monies awarded. Upon plaintiffs' motion for summary judgment, Judge Sand determined that, even accepting Local 3's factual allegations as true, the union, estopped from denying its own intentionally wrongful conduct by virtue of the prior litigation, could not, as a matter of law, state a claim to contribution, indemnification, or other relief from plaintiffs. The district court found that contribution is not available to a defendant found to be in violation of Title VII of the Civil Rights Act of 1964, by virtue of the Supreme Court's holding in Northwest Airlines Inc. v. Transport Workers, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). The rationale of this case, the district court asserted, extends to claims for indemnification, as well as to claims for contribution or indemnification under Sec. 1981, at least in the circumstances presented here. The court concluded that, even accepting the union's contentions that Local 3 acted as an employment agency for the Garden and that the Garden directed Local 3's discriminatory actions, Local 3 has no entitlement to recovery from its former co-defendants, or their indemnitors, of any monies paid (or to be paid) to the individual plaintiffs in the antecedent litigation.
 
 II.
 
 6
 On appeal, Local 3 contends that the district court erred in holding that the union can assert no right to contribution or indemnification under either Title VII or Sec. 1981. The union argues that the holding in Northwest Airlines should be read narrowly, to bar the assertion of a claim to contribution under Title VII only in circumstances in which no charge of discrimination was ever filed against the party from whom contribution is sought. Local 3 relies on the following language in the Court's opinion:
 
 
 7
 A court's broad power ... to fashion relief against all respondents named in a properly filed charge is not, of course, at issue in this litigation since no charge was filed against either of the respondent unions.
 
 
 8
 451 U.S. at 93 n. 28, 101 S.Ct. at 1581 n. 28. In addition, the union contends that the decision in Northwest Airlines should not be construed to frustrate claims to contribution or indemnification under Sec. 1981. Local 3 contends that the holding in Northwest Airlines hinged on the concern that a judicially-fashioned right to contribution under Title VII would upset a comprehensive administrative scheme--a scheme not legislated in the context of Sec. 1981 actions. Finally, Local 3 contends that the holding in Northwest Airlines does not extend to claims for contribution or indemnification by agents against their principals and that Local 3 acted at the direction of the Garden entities in the perpetration of its discriminatory practices.
 
 
 9
 Local 3's first argument--that the holding in Northwest Airlines does not bar actions for contribution among the named respondents in a Title VII litigation--was rightly rejected by the district court. The Supreme Court's language at 451 U.S. at 93 n. 28, 101 S.Ct. at 1581 n. 28, addresses only a court's power to apportion damages among Title VII defendants in a judgment. The issue of whether a party found in violation of Title VII is entitled to bring a later suit against another named respondent is a distinct question, for which other language in the Court's opinion is pertinent:
 
 
 10
 Whatever may be a federal court's power to fashion remedies in other areas of the law, we are satisfied that it would be improper for us to add a right to contribution to the statutory rights that Congress created in ... Title VII.
 
 
 11
 451 U.S. at 98, 101 S.Ct. at 1581 (footnote omitted). The rationale of this holding extends to claims for indemnification, as the district court held: "As with contribution, such claims could only arise by implication under the statute[ ] or under common law principles, and the same argument would preclude recognition of indemnity under either theory." 582 F.Supp. at 633.
 
 
 12
 We likewise agree with the district court's analysis with regard to the propriety of recognizing a right of contribution or indemnification under Sec. 1981. The legislative scheme for Title VII enforcement would, indeed, be disrupted if defendants found liable under both Title VII and Sec. 1981 were permitted to bring actions among themselves. Id. at 631. In particular, the threat of Sec. 1981-derived actions among persons conceivably liable under Title VII would discourage the voluntary settlement of employment discrimination claims. The courts have asserted, on numerous occasions, the importance of voluntary settlements in this area of the law, as such settlements work to speed the placement, in the workplace, of historically underrepresented groups. See, e.g., Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981); Bushey v. New York State Civil Serv. Comm'n, 733 F.2d 220, 226 (2d Cir.1984); Kirkland v. New York State Dep't of Corrections Servs., 711 F.2d 1117, 1128 (2d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). Congress, of course, expressed a strong preference for voluntary settlement in the enactment of Title VII. See Carson, 450 U.S. at 88 n. 14, 101 S.Ct. at 998 n. 14. We agree with the district court that there is little reason to depart from general principles of common law in order to recognize a right of contribution or indemnification in favor of the intentional tortfeasor in the circumstances presented here. See Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982) (finding of discriminatory intent is a prerequisite to liability under Sec. 1981); see generally W. Prosser, The Law of Torts, Secs. 50, 51 at 308, 312 (1971).
 
 
 13
 The union is not helped by its contention that it acted as the agent of the Garden entities with respect to the discriminatory hiring practices in which it participated. Whatever the merits of this contention, the district court was correct in asserting that the contention establishes, at most, a basis for the Garden entities' liability in the antecedent litigation. The question whether Local 3 has an entitlement to contribution or indemnification from its former co-defendants is still governed by the decision and rationale of Northwest Airlines. Parenthetically, even if we were to adopt an artificially narrow construction of the Supreme Court's holding in this case, as pressed by defendant, established principles of common law would still militate against the recognition of a cause of action in the present circumstances. As the district court noted, for instance, even if indemnification is sometimes allowed because the indemnitee acted "pursuant to directions of the indemnitor," this principle is invoked only if the indemnitee reasonably believed his directions to be lawful. See Restatement (Second) of Torts Sec. 886B(2)(b) (1979). The union, found to be in violation of Sec. 1981, cannot assert a good faith belief in the lawfulness of its conduct. We agree with Judge Sand that, even assuming Local 3 acted at the direction of the Garden entities, any claim to contribution or indemnification must fail.
 
 III.
 
 14
 Local 3 also contends that Judge Sand should be directed to recuse himself, as his involvement in the antecedent litigation prevented, according to the union, a disinterested review of the settlement and the consent decree which the district court had previously approved. In addition, the union asserts that the court's sympathy for the individual plaintiffs affected its ability to appraise the relative responsibility of the Garden entities and Local 3, and thus to rule on the summary judgment motion. In large measure, the union bases this argument on the following statement by Judge Sand:
 
 
 15
 I suggest to you that there is over half a million dollars, large portions of which have been held by the courts to be the entitlement of people who earn their livelihood by pushing a mop around and that there is an obligation on the part of the Court as well as counsel in any way involved in this matter in advancing rather than delaying the time at which the sums to which those persons are entitled are received by them.
 
 
 16
 Local 3, however, has made no showing that the district court's impartiality can reasonably be questioned. Judge Sand's knowledge of and involvement in the antecedent litigation, without more, would certainly not lead any reasonable person, "aware of all the facts," to question the court's impartiality. United States v. Ferguson, 550 F.Supp. 1256, 1259-60 (S.D.N.Y.1982). We read the district court's statement to be a commendable expression of the court's desire to expedite the proceedings. This desire to proceed with due haste in order that the individual plaintiffs might receive their compensation cannot be construed as evidence of bias. Local 3's argument is without merit.IV.
 
 
 17
 Even accepting Local 3's factual allegations as true, the union states no claim to contribution or indemnification under Title VII, Sec. 1981, or otherwise against the plaintiffs herein. Accordingly, we affirm the judgment of the district court, which granted plaintiffs' motion for summary judgment and dismissed Local 3's claims.