Marcela OLVERA–MORALES, On Behalf of Herself and All Others Similarly Situated, Plaintiff,

v.

STERLING ONIONS, INC.; Zappala Farms, LLC; Zappala Holding Company, LLC; Zappala Enterprises, Inc.; James Zappala; International Labor Management Corporation, Inc; North Carolina Growers' Association, Inc.; and Del–Al Associates, Inc., Defendant.

No. 02–CV–1589.

United States District Court, N.D. New York.

June 1, 2004.

Farm Workers Legal Services Inc., New Paltz, NY (Daniel Werner, of Counsel), Now Legal Defense and Education Fund, New York City (Wendy R. Weiser, of Counsel), for Plaintiff On behalf of herself and all others similarly situated.

Amdursky, Pelky Law Firm, Oswego, NY (Joseph E. Wallen, of Counsel), for Defendant Sterling Onions, Inc.; Zappala Farms, LLC.; Zappala Holding Co. LLC.; Zappala Enterprises, Inc.; James Zappala.

Constangy, Brooks Law Firm, Winston Salem, NC (Virginia A. Piekarski, of Counsel), for Defendant International Labor Management Corporation, Inc.

Bond, Schoeneck Law Firm, Syracuse, NY (Subhash Viswanathan, of Counsel), for Defendant North Carolina Growers' Association, Inc.

Plunkett & Gibson, Inc., San Antonio, TX (Gary L. Fuller, of Counsel), Hancock, Estabrook Law Firm, Syracuse, NY (John T. McCann, of Counsel), for Defendant Del–Al Associates, Inc.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### INTRODUCTION

Plaintiff brings this employment discrimination action on behalf of herself and similarly situated women pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII") and New York Human Rights Law, N.Y. Exec. Law § 296. Plaintiff, a Mexican national, applied in Mexico for temporary employment in the United States and came here to work under the federal guest worker visa program. She claims that, although she and other unskilled women workers were qualified for positions under the federal H–2A temporary agricultural program, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), defendants reserved those jobs for men and deliberately steered her and other women like her into the H–2B temporary non-agricultural program, 8 U.S.C.

§ 1101(a)(15)(H)(ii)(b), which offers lower paying jobs with fewer benefits.

Presently before the Court are three motions. First, defendants International Labor Management Corporation, Inc. ("ILMC") and North Carolina Growers' Association, Inc. ("NCGA") move for dismissal of plaintiff's claims on grounds of lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1), and failure to state a claim, Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment under Fed.R.Civ.P. 56(b). Second, defendant Del–Al Associates, Inc. ("Del–Al") moves for the same relief.

Finally, defendants Sterling Onion, Inc.; Zappala Farms, LLC; Zappala Holding Company, LLC; Zappala Enterprises, Inc.; and James Zappala (collectively, "Zappala defendants") move for summary judgment pursuant to Fed.R.Civ.P. 56(a) granting their cross claim against ILMC for indemnification. The Zappala defendants also sought summary judgment dismissing the complaint; however, plaintiff's claims against the Zappala defendants have been settled and that aspect of the motion is moot.

## BACKGROUND

### Complaint

In her complaint, plaintiff brings class action claims against ILMC, NCGA and Del–Al, and individual claims against all defendants. In her class action claims on behalf of herself and all other similarly situated women, plaintiff, a Mexican national living in Mexico, avers that ILMC, NCGA and Del–Al recruited and hired workers from Mexico and elsewhere to work in the United States under the H–2A and H–2B visa programs for temporary guest workers. According to plaintiff, they discriminated against her and other female guest workers by steering them

into positions as H–2B workers and refusing to hire them for, or assign them to, more desirable positions as H–2A workers. She asserts that these defendants were "employment agencies" within the meaning of Title VII and New York's Human Rights Law, that they acted as "employers" of plaintiff and other female H–2B workers by exercising a significant degree of control over the terms and conditions of their employment, and that they share an "identity of interest" with respect to the claims in the complaint.

In support of her individual claims against ILMC, NCGA and Del–Al, plaintiff alleges that they acted as hiring agents for the Zappala defendants and in that capacity recruited unskilled workers in Mexico, including plaintiff, to work in the United States for the Zappala defendants and other employers. Plaintiff states that ILMC, NCGA and Del–Al provided plaintiff with an H–2B visa and did not offer her an H–2A position, although she was qualified for both positions. On July 20, 1999, defendants ILMC, NCGA and Del–Al sent plaintiff to work as an H–2B worker in a packing shed in Michigan packing carrots where she continued to work until November 1999. Then ILMC and NCGA transferred her to work in a packing shed in New York packing onions for the Zappala defendants, where she worked as an H–2B worker until February 19, 2000.

In support of her individual claims against the Zappala defendants, plaintiff claims that they employed her as an H–2B worker, that they exercised a significant degree of control over the terms and conditions of her employment, and that they discriminated against her on the basis of gender by refusing to hire her for, assign her to, transfer her to, or employ her in an H–2A position because she is a woman. The complaint further alleges that the

Zappala defendants "almost always seek male workers" to fill H–2A positions.

Count I states a Title VII claim by plaintiff on her own behalf against the Zappala defendants for sex discrimination. Count II states a Title VII claim by plaintiff on her own behalf and on behalf of the class against ILMC, NCGA and Del–Al for sex discrimination. Counts III and IV respectively state the same claims under the New York Human Rights Law. Count V states a claim against all defendants for aiding and abetting discriminatory practices in violation of New York Human Rights Law. The complaint seeks monetary and injunctive relief.

**EEOC charges**

On April 18, 2000, plaintiff through her lawyer filed two charges of discrimination with the Buffalo Local Office of the Equal Employment Opportunity Commission (EEOC). The first charge, Charge No. 165A00523, was filed against ILMC as an employment agency. The second charge, Charge No. 165A00524, was filed against Sterling Onions, Inc., and Zappala Farms, LLC, as employers. On March 15, 2002, plaintiff filed amended charges adding NCGA and Del–Al as respondents to Charge No. 16500523 and adding ILMC, NCGA, Zappala Holding Company, LLC, Zappala Enterprises, Inc. and James Zappala as respondents to Charge No. 16500524.[1] On September 16, 2002, the EEOC District Director issued a Determination finding reasonable cause to believe that the respondents had violated Title VII.

Plaintiff filed the complaint herein on December 20, 2002. On April 22, 2003, United States Magistrate Judge (now District Judge) Gary L. Sharpe held an initial

conference, at which the parties agreed to conduct only limited discovery and to take no depositions before defendants filed initial dispositive motions.

## DISCUSSION

### Title VII: parties not named in plaintiff's EEOC complaint

■ NCGA and Del–Al argue that plaintiff's claims against them must be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). On a challenge to its subject-matter jurisdiction, a court may consider evidentiary matters outside the pleadings. *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976). The party asserting jurisdiction has the burden of proving its existence, *see United Food & Commercial Workers Union v. Center-Mark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994), and, where necessary, is entitled to discovery of facts relevant to the issue, particularly "where the facts are peculiarly within the knowledge of the opposing party." *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

■ NCGA and Del–Al base their Rule 12(b)(1) motion on the ground that plaintiff did not name them in her initial EEOC charges. As a prerequisite to suing a party under Title VII, a plaintiff must file with the EEOC (or authorized state agency) a charge naming that party. *See* 42 U.S.C. § 2000e–5(e); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991). The Second Circuit has stated, however, that "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title

---

1. On June 26, 2002, plaintiff filed second amended charges adding Agway, Inc., as an employer to Charge No. 16500524. On September 30, 2002, at EEOC's request, a con-firmed copy of the second amended charges was filed. This second amendment has no bearing on the issues before the Court.

VII and its jurisdictional and pleading requirements, we have taken a 'flexible stance in interpreting Title VII's procedural provisions,' so as not to frustrate Title VII's remedial goals." *Id.* (citation omitted). Thus, courts in this circuit have recognized an exception—called the "identity of interest" exception—to the general rule that a Title VII defendant must have been named in an EEOC charge. This exception permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed party and a party named in the EEOC charge. *See id.*

In determining the applicability of the identity of interest exception, the *Johnson* court considered four factors:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and]

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10.

It has not been determined in this circuit whether the identity of interest exception is available only to *pro se* plaintiffs or whether it is also available to represented plaintiffs. In *Johnson*, the Second Circuit noted the fact that the plaintiff was not represented by counsel when she filed the EEOC charge; the court did not, however, explicitly base its determination on this fact, nor is it listed as one of the four relevant factors. A number of district courts have limited the application of the exception to plaintiffs who were unrepresented at the EEOC stage. *See, e.g., Prevost v. New York State,* 2004 WL 32860, \*5 n. 1 (S.D.N.Y.2004) (applying exception based on assumption that plaintiff was not represented); *Gagliardi v. Universal Outdoor Holdings, Inc.,* 137 F.Supp.2d 374, 379 (S.D.N.Y.2001) (identity of interest exception "is limited to situations where a plaintiff was not represented by counsel at the time the EEOC charge was filed."); *Harrington v. Hudson Sheraton Corp.,* 2 F.Supp.2d 475, 478 (S.D.N.Y.1998) (refusing to apply exception where plaintiff was represented by counsel when charge was filed, noting that "[t]o hold otherwise would be to undermine the well-settled principle that a party must be named in an administrative charge in order for a court to have jurisdiction over the claim at issue."); *Tarr v. Credit Suisse Asset Mgmt., Inc.,* 958 F.Supp. 785, 794 (E.D.N.Y.1997) (refusing to apply exception where plaintiff was represented by counsel when charge was filed).

Two district courts in this circuit have applied the exception where a plaintiff was represented by counsel at the EEOC stage. In *Manzi v. DiCarlo,* the court considered the four *Johnson* factors and applied the identity of interest exception to plaintiff's case despite the fact that she was represented by counsel when she filed her EEOC charge.[2] 62 F.Supp.2d 780, 788

---

**2.** The *Manzi* court observed that "the complexities are such that an inexperienced Title

VII lawyer is no more competent to deal with the vagaries of this statute's jurisdiction-

(E.D.N.Y.1999). The *Manzi* court determined the second and third *Johnson* factors in favor of plaintiff, that is, it found that the interests of the named party were so similar to those of the unnamed party that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings, and that the unnamed party's absence from the EEOC proceedings did not result in actual prejudice to its interests. It further found that the unnamed defendant had received adequate notice of the EEOC charge and an opportunity to participate in conciliation proceedings. Thus, the court concluded, the unnamed party's absence from the EEOC proceedings did not undermine the two-fold purpose of the exhaustion requirement, *i.e.,* to notify the charged party of the alleged violation and to facilitate its voluntary compliance with the law. *Id.* Similarly, despite the fact that the plaintiff was represented at the EEOC stage, the district court in *Flower v. Mayfair Joint Venture,* 2000 WL 272187, *6 (S.D.N.Y. 2000), declined to dismiss a complaint against a defendant who was not named in the EEOC charge where the unnamed defendant had received notice of the EEOC charge but plaintiff did not learn of that defendant's identity until after filing the lawsuit.[3]

Here, plaintiff does not deny that she was represented by counsel when she filed her EEOC charges. Nor does her attorney claim to be unfamiliar with the complexities of Title VII.[4] Rather, plaintiff argues that despite the fact that she was represented by experienced counsel at the EEOC stage, the Court should apply the rationale of *Johnson* to allow her Title VII action to proceed against NCGA and Del–Al.

■ The Court concludes that it is not constrained to dismiss plaintiff's Title VII claims against NCGA and Del–Al solely on the basis that plaintiff was represented by experienced counsel at the EEOC stage. The *Johnson* decision does not explicitly require such a result. Indeed, the four *Johnson* factors do not even mention a plaintiff's status as represented or *pro se;* rather, they evince the Second Circuit's concern with balancing two goals: (1) promoting the purposes of the EEOC requirement, *i.e.,* notifying the charged party of the alleged violation and facilitating its voluntary compliance with the law; and (2) promoting the purpose of Title VII to protect employees from discrimination. Neither of these goals is necessarily advanced by an arbitrary rule requiring dismissal of claims against an unnamed party whenever the plaintiff was represented by counsel or whenever the plaintiff was represented by counsel experienced in Title VII cases. Rather, a proper balance between these

al...requirements than a layman." 62 F.Supp.2d at 788. However, that court made no explicit finding that plaintiff's counsel lacked experience in Title VII cases, and the issue does not appear to have been a factor in the outcome. Rather, the court focused on the purpose of the administrative exhaustion requirement.

**3.** As in *Manzi,* the *Flower* court commented that a lawyer with little or no Title VII experience is "no more competent to deal with the vagaries of Title VII" than a layman. The *Flower* court did not find, however, that plain-

tiff's counsel was inexperienced; rather, it seems that the purpose of the comment was to point out the arbitrariness of a distinction between represented and unrepresented plaintiffs.

**4.** It appears from the website of plaintiff's attorney at *www.flsny.org* that it is an organization experienced in Title VII actions. A review of the organization's current litigation listed on the website indicates that it is presently involved in at least two employment discrimination cases.

two sometimes-competing goals is best achieved by a case-by-case evaluation of the circumstances in light of the *Johnson* factors. *See, e.g., Manzi*, 62 F.Supp.2d at 788.

The Court now turns to consider the present record in light of the four *Johnson* factors. The first factor is whether the role of the unnamed party could through reasonable effort by the complainant have been ascertained at the time of the filing of the EEOC complaint. In affidavits from plaintiff and her attorney, plaintiff adduces proof that at the time the charges were filed, there was no evidence available to suggest to plaintiff or her counsel that NCGA or Del–Al were involved in plaintiff's recruitment and hiring. For example, plaintiff shows that ILMC was the sole named entity on her employment contract, on her H–2B visa and on the reverse side of her I–94 departure record. She also shows that James Zappala testified in another case that he dealt with ILMC when recruiting H–2A and H–2B workers and made no mention of NCGA or Del–Al. Further, with respect to Del–Al, plaintiff submits evidence supporting her assertion that she reasonably concluded that Jorge Del Alamo, Del–Al's representative, was an employee of ILMC. For example, her H–2B visa, which she received from Del Alamo, bears only the name of ILMC. In this regard, Del Alamo submits affidavits and exhibits to the effect that prior to entering the United States, plaintiff received a number of documents "indicating the existence of Del–Al." Del Alamo further asserts that Del–Al's corporate attributes are entirely distinct from those of ILMC.

The second *Johnson* factor is whether the interests of NCGA and/or Del–Al are so similar to those of ILMC that, for the purpose of obtaining voluntary conciliation and compliance, it was unnecessary to in-clude NCGA and/or Del–Al in the EEOC proceedings. With respect to NCGA, plaintiff submits evidence that ILMC and NCGA share the same property and resources and have significant overlap of ownership, officers, directors and staff. Plaintiff also points to evidence that ILMC and NCGA rotate workers depending on regional labor needs. In opposition to plaintiff's position, C. Stanford Eury, Jr., ILMC's President and NCGA's Executive Director, submits an affidavit explaining the differences between the structure, purposes and methods of the two companies. Del–Al asserts that it does not share similar interests with ILMC or NCGA.

With respect to the third *Johnson* factor—whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party—plaintiff contends that the interests of ILMC and NCGA are so similar that there could be no prejudice. Eury explains, however, that NCGA acts in some respects as "joint employer" of the workers whereas ILMC does not. Thus, he says, "[i]f [he] had believed that NCGA would be implicated, [he] would have been deeply concerned because of the class allegations and possibly would have made dramatically different strategic decisions with respect to defense of the charge and conciliation." Del–Al claims that its absence from the EEOC proceedings resulted in actual prejudice because it was denied the opportunity to resolve plaintiff's complaints prior to incurring the legal fees and costs of defending against the complaint.

With respect to the fourth factor—whether the unnamed party in some way represented to plaintiff that its relationship with her was to be through the named party—plaintiff submits her own affidavit as well as documents supporting her assumption that Del Alamo was employed by ILMC. Similarly, she shows that NCGA is

not referenced on the documents relating to her recruitment and hiring. Eury claims that neither he nor anyone else represented to plaintiff that any relationship with NCGA was to be through ILMC; to the contrary, he says, NCGA had no dealings with plaintiff whatsoever. Del–Al claims it made no representations to plaintiff to the effect that her relationship with Del–Al should be through ILMC.

Plaintiff's counsel states that he believes that depositions of representatives of ILMC, NCGA and Del–Al will support plaintiff's claim that the *Johnson* factors support adding NCGA and Del–Al as defendants despite the failure to name them in the EEOC complaint. For example, in connection with her claim that ILMC and NCGA are alter-egos [5] and have identical interests, plaintiff wants to conduct discovery on issues such as whether the two entities have followed the formalities required for corporate existence, whether they are independently adequately capitalized, whether there is intermingling of corporate funds with the principals' personal affairs, the extent of intermingling of funds, assets and property between the two corporations, the amount of business discretion displayed independently by the two companies, and the extent to which they are independent profit centers. Plaintiff's counsel also states that he needs to depose ILMC, NCGA and Del–Al concerning their policies and practices in recruiting, hiring and transferring workers as well as their communications with plaintiff and other workers at the time of recruitment, hiring and employment.

On thorough consideration of the evidence submitted by the parties relative to the *Johnson* factors, the Court concludes that plaintiff has demonstrated her entitlement to further discovery of facts relevant to the issues. *See generally Kamen,* 791 F.2d at 1011. Much of the evidence relied on by the moving defendants, in particular the affidavits of Eury, Zappala and Del Alamo, is solely accessible to defendants. *See id.* Although plaintiff served interrogatories on defendants, plaintiff's counsel says that defendants' responses were "inadequate" and "deficient" but that plaintiff did not have the opportunity to address the issue before defendants served their dispositive motions. Plaintiff makes a sufficient showing of the nature of the uncompleted discovery, how the facts sought are reasonably expected to create a genuine issue of material fact, what efforts have been made to obtain those facts and why those efforts were unsuccessful, so as to warrant giving plaintiff an opportunity for full discovery to enable her to oppose the motion. Accordingly, the dismissal motions by NCGA and Del–Al on this ground are denied without prejudice to renewal after full discovery.

### Title VII: whether plaintiff was "qualified"

Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation-

---

5. The Court is not convinced that the labor relations cases cited by plaintiff concerning entities which are "alter-egos" or "single employers" are applicable here. *See, e.g., Newspaper Guild of New York v. NLRB,* 261 F.3d 291, 298–99 (2d Cir.2001) (where two entities are not "alter-egos," one entity is not subject to the collective-bargaining obligations of the other). However, factors relevant to the "alter-ego" inquiry are similar to those bearing on the second and third *Johnson* factors with respect to the similarity of interests of the named and unnamed entities.

al origin[.]" 42 U.S.C. § 2000e–2(a)(1). To make out a Title VII employment discrimination claim, a plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir.2002).

Defendants ILMC, NCGA and Del–Al move to dismiss plaintiff's Title VII claims pursuant to Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) provides for dismissal where, accepting the material facts in the complaint as true, it appears beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). Defendants contend that plaintiff cannot prove that she was qualified for the position when she applied and thus cannot make out a Title VII claim. These defendants note that an employer is prohibited from hiring an unauthorized alien to work here and is required to verify that an applicant is authorized, *see* 8 U.S.C. § 1324a(a), (b); therefore, an employer cannot legally hire an alien applicant who is not able to present the required documentation. They rely on evidence that plaintiff applied to Del–Al for the position on July 20, 1999, but that her I–94 Departure Record was not approved and stamped by the Immigration and Naturalization Service ("INS") until July 27, 1999. Thus, they reason, when plaintiff applied for the position, she was not qualified within the meaning of Title VII because she did not yet have INS documentation authorizing her to work in the United States.

There is no direct precedent in the Second Circuit. Defendants rely on two Fourth Circuit cases in support of their argument. The first, *Egbuna v. Time–Life, Libraries, Inc.*, 153 F.3d 184, 187 (4th Cir.1998), dismissed a complaint by an illegal alien alleging discriminatory refusal to rehire him in the United States. The court held that the plaintiff was not qualified for the position within the meaning of Title VII because he was not authorized for employment here. The second, *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504–05 (4th Cir.1999), dismissed the complaint of a foreign national employed outside the United States by a United States employer at the time of the alleged discriminatory denial of transfer to a position in United States. That court, citing *Egbuna*, held that, because he lacked documentation authorizing him for employment here, the plaintiff was not qualified under Title VII.

■ In the view of this Court, it is far from clear on the present factual record that the Second Circuit would apply the rationale of *Egbuna* and *Chaudhry* to dismiss the complaint in the instant action on the ground that plaintiff was an undocumented alien when she applied. It appears that plaintiff and defendants anticipated that, as part of the application and hiring process, plaintiff would obtain proper documentation prior to beginning work, and indeed, this is what occurred. This Court declines to rule on the present record that the timing of these events conclusively deprives plaintiff of all protection against discriminatory hiring practices. The Court merely observes that a categorical ruling that a foreign national has no protection against discriminatory hiring practices simply because she applied to work in the United States a few days before receiving INS documentation has the potential to invite abuse by employers and to undermine the goals of Title VII.

The details surrounding defendants' recruitment, application and hiring activities, however, are not adequately developed on

this record, nor are the details relative to plaintiff's contacts with Del–Al, her classification as an H–2B worker, the submission of her documentation request and her hiring. Many of the pertinent facts are within defendants' possession or control, and plaintiff has had only limited discovery. Until the Court has an adequate record before it, it cannot properly address the issue.

ILMC, NCGA and Del–Al also argue that the application of Title VII here would amount to unlawful extraterritorial application of that law. In support of this argument, they rely on another Fourth Circuit case, *Reyes–Gaona v. NCGA*, 250 F.3d 861, 866–67 (4th Cir.2001). There, the Fourth Circuit held that the Age Discrimination in Employment Act ("ADEA") does not cover foreign nationals when they apply in foreign countries for jobs in the United States. Plaintiff in that case applied to Del–Al in Mexico for employment with NCGA in the United States and was rejected due to his age. The Fourth Circuit framed the issue as whether the ADEA can properly be given "extra-territorial application" and observed that "[t]he simple submission of a resume abroad does not confer the right to file an ADEA action." *Id.* at 866. The court rejected the plaintiff's argument that the case did not implicate extra-territorial application of the ADEA because the job he sought was in the United States.

■ At this point, it is not necessary for this Court to decide whether the rationale of *Reyes–Gaona* would be adopted in this circuit, because the case at bar appears to be distinguishable from *Reyes–Gaona* on significant factual grounds. In *Reyes–Gaona*, the plaintiff's application for work in the United States was rejected in Mexico and there is no indication that he applied for or obtained authorization to work in the United States or that he came to work here. As such, his contacts with the United States were minimal. In contrast, it is undisputed that plaintiff in the instant case applied to and was hired by a United States company in Mexico to work in the United States. As part of the process, she obtained INS authorization, after which she worked here as an authorized alien. Given the extensive contacts with the United States at all stages of the recruitment, hiring and employment process, it is not clear that the extension of Title VII protection to plaintiff would amount to extraterritorial application of that law. *See generally Torrico v. International Business Mach. Corp.*, 213 F.Supp.2d 390, 399–405 (S.D.N.Y.2002). Again, the record is inadequate to enable the Court to decide the issue.

■ Moreover, once she began working here, plaintiff was protected from any subsequent discriminatory employment practices. It is beyond dispute that legal aliens employed in the United States are protected from discrimination in all aspects of employment. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). There are allegations in the complaint sufficient to allege that the discriminatory practices continued after plaintiff arrived in the United States. Defendants are not entitled to dismissal on this ground. Fed. R.Civ.P. 12(b)(6). Further, there is evidence in the record to the effect that ILMC and/or the Zappala defendants could and should have obtained an H–2A visa for plaintiff after she began working in the United States.[6] This is a matter on

6. According to the affidavit of C. Stanford Eury, Jr., President of ILMC, when plaintiff was transferred from Michigan to New York, ILMC "intended to have her visa changed from H–2B to H–2A so that she could lawfully perform the work at Zappala Farms[,]"

which plaintiff may need discovery. The present record is insufficient to warrant summary judgment on this ground.

### Plaintiff's state law claims

Defendants ILMC, NCGA, and Del–Al move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff's causes of action under New York's Human Rights Law, N.Y. Exec. Law § 296, as being time-barred. They argue that, because the instant action was filed on December 23, 2002, any claims based on alleged discrimination occurring prior to December 23, 1999, are time-barred under the applicable three-year limitations period. *See* N.Y. Civ. Prac. L. & R. 214(2); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996).

Plaintiff asserts that she benefits from the "continuing violation" exception to the limitations period. This exception applies when a plaintiff experiences a continuous practice and policy of discrimination. *See Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). As the Second Circuit explains: "While discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation, a continuing violation may be found where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* (citation omitted). Where a

plaintiff establishes a continuing violation, "all claims of discrimination under [the discriminatory] policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993).

 Plaintiff's complaint adequately asserts a continuing violation arising from defendants' alleged course of action in placing and retaining plaintiff in an H–2B position and their alleged policy and practice of placing women in H–2B positions. It cannot be said that it appears beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. *See Valmonte,* 18 F.3d at 998. Accordingly, Rule 12(b)(6) dismissal on the ground of the statute of limitations is denied.

 The Court also declines to grant summary judgment dismissing plaintiff's Title VII claims against ILMC and NCGA as "employers" on the ground that they do not employ the requisite number of employees. Plaintiff is entitled to discovery on this issue. *See* Fed.R.Civ.P. 56(f).

ILMC, NCGA and Del–Al also contend that plaintiff's New York Human Rights Law claims must be dismissed because the Court lacks subject-matter jurisdiction over claims alleging discriminatory acts by a non-resident employer against a non-resident employee occurring outside the State of New York. *See* N.Y. Exec. Law 298–a. Given the breadth of plaintiff's allegations in the complaint and her lack of opportunity for full discovery, it would be

which, according to Eury, only employed H–2A workers. Plaintiff's visa was never changed; Eury attributes this to the Zappala defendants' failure to provide ILMC with the necessary paperwork.

In contrast, in his affidavit, James Zappala, president of defendant Sterling Onions, Inc., and Operating Member of defendant Zappala Farms, LLC, states that "whatever claim of

discrimination based on sex had or had not occurred in the recruitment process was a completed act solely and exclusively on the part of [ILMC] occurring before the H–2b Visa was granted by the U.S. Government and for Zappala Farms, LLC to have hired Marcela Olvera–Morales as an H–2a agricultural worker would have constituted unlawful employment of an alien[.]"

premature to grant dismissal on this ground.

## The Zappala defendants' cross claim for indemnification and costs

The Zappala defendants assert that neither the complaint nor plaintiff's answers to interrogatories attribute specific acts to the Zappala defendants. They urge that "the Complaint in this case attacks the recruiting process which was undertaken solely and exclusively by [ILMC] and which was a completed act by the time the guest workers were presented to either Sterling Onions, Inc. or Zappala Farms, LLC, with their visas in hand[.]" Therefore, they contend, they are entitled to summary judgment on so much of their cross claim against ILMC as seeks indemnification and the costs of their defense, including attorney's fees.[7]

■ It is well established that a Title VII defendant has no right of indemnification or contribution. *See Northwest Airlines, Inc., v. Transport Workers Union of America*, 451 U.S. 77, 94–95, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); *Anderson v. Local Union No. 3, International Brotherhood of Electrical Workers*, 751 F.2d 546, 548–49 (2d Cir.1984); *M.O.C.H.A. Society, Inc., v. City of Buffalo*, 272 F.Supp.2d 217, 220–22 (W.D.N.Y.2003). Thus, the Zappala defendants are not entitled to summary judgment awarding indemnification regarding plaintiff's Title VII claims.

Nor are the Zappala defendants entitled to summary judgment granting indemnification from ILMC with respect to plaintiff's claims based on New York Human Rights Law. Assuming without deciding that New York law recognizes a claim for indemnification for liability under the Human Rights Law, the Court finds that the present record does not support summary judgment on this ground. There are allegations in the complaint and evidence in the record to the effect that the Zappala defendants participated in the alleged wrongful conduct. "Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 492 N.Y.S.2d 371, 375 (1st Dep't 1985) (citing *Rock v. Reed–Prentice Div. of Package Machinery Co.*, 39 N.Y.2d 34, 39, 382 N.Y.S.2d 720, 346 N.E.2d 520 (1976)).

## CONCLUSION

Accordingly, it is

ORDERED that the motion by defendants International Labor Management Corporation, Inc. and North Carolina Growers' Association, Inc. to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(1) and(6) or for summary judgment under Fed.R.Civ.P. 56(b), is denied in accordance with this Memorandum–Decision and Order; and it is further

ORDERED that the motion by defendant Del–Al Associates, Inc. to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(1) and(6) or for summary judgment under Fed.R.Civ.P. 56(b), is denied in accordance with this Memorandum–Decision and Order; and it is further

ORDERED that the motion by defendants Sterling Onion, Inc.; Zappala Farms, LLC; Zappala Holding Company, LLC; Zappala Enterprises, Inc.; and James Zappala for summary judgment

---

7. As noted, the Zappala defendants also sought summary judgment dismissing the complaint; however, plaintiff's claims against them have been settled and that aspect of the Zappala defendants' motion is moot.

pursuant to Fed.R.Civ.P. 56(a) granting their cross-claim for indemnification against International Labor Management Corporation, Inc. is denied in accordance with this Memorandum–Decision and Order.

IT IS SO ORDERED.